Simon and Beverly **CHAVEZ,** on behalf of their minor son, Matthew Chavez, **Plaintiffs,**

v.

**BOARD OF EDUCATION OF TULAROSA MUNICIPAL SCHOOLS; the New Mexico Public Education Department; and Veronica Garcia, Secretary of the NMPED in her individual and official capacity, Defendants.**

No. CIV. 05–0380 JB/RLP.

United States District Court, D. New Mexico.

Nov. 17, 2008.

Opinion Denying Motion to Amend Judgment Feb. 21, 2009.

Opinion Denying Clarification Feb. 21, 2009.

Gail Stewart, Laurel Nesbitt, Steven Grabber Attorney at Law, P.A., and Tara Ford, Pegasus Legal Services for Children, Albuquerque, NM, for the Plaintiff.

Gerald Coppler, Coppler & Mannick, P.C., Santa Fe, NM, for Defendant Board of Education of Tularosa Municipal Schools.

Andrew S. Montgomery, Jeffrey J. Wechsler, Montgomery & Andrews, P.A., Santa Fe, NM, for Defendants New Mexico Public Education Department and Veronica Garcia.

### MEMORANDUM OPINION AND ORDER

JAMES O. BROWNING, District Judge.

THIS MATTER comes before the Court on: (i) the Plaintiffs' IDEA Brief in Chief, filed August 23, 2006 (Doc. 84); (ii) Plaintiffs' Supplemental IDEA Brief, filed October 30, 2008 (Doc. 173)("Plaintiff's Supp. Brief"); (iii) Defendant NMPED's Pre–Hearing IDEA Answer Brief, filed October 4, 2006 (Doc. 92); and (iv) NMPED's Post–Hearing IDEA Brief, filed November 3, 2008 (Doc. 181)("Defendant's Supp. Brief"). The Court held a two-day evidentiary hearing on whether to supplement the record on July 25, 2008 and August 1, 2008. The primary issues are: (i) whether the Administrative Appeal Officer ("AAO") erred by failing to exercise jurisdiction over claims against the New Mexico Public Education Department ("NMPED")[1]; (ii) whether the NMPED had a duty under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–82, to make certain that the Tularosa Municipal Schools, and if not Tularosa Schools, then the NMPED provided educational services to Matthew Chavez; and (iii) whether equitable relief should include reimbursement for Matthew Chavez' mother's efforts; injunctive, declaratory, and compensatory education, and systemic relief to ensure, across the State of New Mexico, an adequate continuum of alternative placements for Matthew Chavez as a student with autism. Because the AAO should have exercised jurisdiction over the claims against the NMPED during the administrative process, and because the NMPED was required to make certain that educational services were provided to Matthew Chavez, the Court finds that the NMPED denied Matthew Chavez a Free and Appropriate Public Education ("FAPE"). The Court declines to order systemic relief. The Court also finds that the remedies that Mr. Chavez and Ms. Nelson seek—compensatory education, $80,000.00, and an order that the NMPED install a hotline—are inappropriate. The Court finds that the harm that the NMPED

---

1. Pursuant to the New Mexico voters' approval of an amendment to the state constitution in the fall of 2003, the State Education Agency ("SEA") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–82, was changed from the "State Department of Education" to a cabinet-level department, named the "Public Education Department."

caused, while real, is not amenable to a court-fashioned remedy.

## FACTUAL BACKGROUND

The following facts are relevant to the Plaintiffs' claim against the NMPED under the IDEA. Matthew is a sixteen-year-old public-school student who qualifies for receipt of special education based on autism. *See* First Amended Complaint ¶ 6, at 2–3, filed May 2, 2005 (Doc. 5)(stating that Matthew was twelve-years-old in 2005). Matthew, a high-functioning autistic student, has been eligible for special-education services beginning in preschool and continuing since that time. *See* Exhibit 1 to Memorandum of Defendant New Mexico Public Education Department in Support of Motion for Summary Judgment, filed August 24, 2006 (Doc. 81)("Memo. in Support of Motion for Summary Judgment"), Decision of the Due Process Hearing Officer, Findings of Fact ¶ 2, at 7 (dated November 17, 2004) ("DPHO"). Matthew is capable of functioning academically at grade level. *See* DPHO, Finding of Fact ¶ 37, at 13. He also enjoys interaction with his peers. *See* DPHO, Finding of Fact ¶ 53, at 15. Matthew, however, "has difficulty attending schools, does not do well with transitions and change, needs clear structure and visual support in the school environment, and regresses behaviorally and academically when he misses school, all characteristics associated with the diagnosis of autism. TR 59, 61, 79, 165, 191, 336, 463, 466–467, 694, 899." DPHO Finding of Fact ¶ 3, at 7. At all relevant times, Matthew has been a physically large boy, and his parents have been unable to physically redirect him since the end of his fifth-grade school year. *See* DPHO Finding of Fact ¶ 29, at 12.

Matthew's parents wanted him to attend school. *See* DPHO Finding of Fact ¶ 31, at 12. From 2003 until the spring of 2006, Matthew was enrolled in the Tularosa Municipal Schools. *See id.* Tularosa Schools had, however, no self-contained classrooms dedicated to instructing students such as Matthew Chavez apart from nondisabled students in the elementary or middle schools during the relevant years. *See* DPHO Finding of Fact ¶ 54, at 15. Moreover, the Tularosa Schools never placed a child in a residential treatment center during the special-education director's tenure with Tularosa Schools. *See* DPHO Finding of Fact ¶ 51, at 15.

Matthew's 2002–2003 school year was "successful." July 25 Tr. at 92:9–11 (Nelson). *See* Petitioner's Exhibits, DPH Record, Tab 7, Letter from Simon and Beverly Chavez re: Request for an I.E.P. Meeting at 4 (dated September 10, 2003)("Last year was an exceptional school year for our son. He attended school regularly and benefited greatly both academically and socially by his inclusion.")("IEP Request Letter").

Tularosa Schools had an educational program in place for Matthew during the 2003–2004 and 2004–2005 school years. *See* DPHO Findings of Fact ¶¶ 14, 26, 28, 36 ¶ 52, at 10, 12–13 & 15. During parts of 2003–2004 and 2004–2005 school years, Matthew refused to attend school. *See* DPHO Findings of Fact ¶¶ 17, 20, 27, at 10–12; Exhibit 2 to Memo. in Support of Motion for Summary Judgment, Decision of the Administration Appeal Officer at 3 (dated March 4, 2005) (adopting the findings of fact of the DPHO Decision)("AAO Decision"). Matthew's "school aversion as manifested by his refusal to attend school [was] directly related to his disability of autism." DPHO Finding of Fact ¶ 61, at 16.

A dispute arose between Matthew's parents, Plaintiffs Simon and Beverly Chavez, and Tularosa Schools over whether Tularosa Schools was obligated to cross the

threshold of the home to provide services in the parents' home to ensure that Matthew attended school. *See* DPHO Findings of Fact ¶¶ 24, 32 & 33, at 11, 13. Tularosa Schools placed Matthew in full-inclusion classes for his sixth-grade, 2003–2004, school year. In September of 2003, Matthew began to refuse to go to school. Regarding Matthew's resistance to attending school, Matthew's mother, Ms. Nelson, testified:

> He would not get out of bed. He urinated in bed because he wouldn't get out to go to the toilet. He wouldn't eat. He wouldn't get dressed. When we would put his shirt on him physically, he would take it off and throw it. When we would force the shoe on his foot, he would kick it off. And if we were in the way, too bad, we got kicked. He would not walk out the door. We tried to physically walk him out the door. We could not. I tried bribing him. I told him if he would go to school, after school, we'd go to the mall and he could pick out a new game. I can't afford that. I can't buy him games every day to get him to school.
>
> He wouldn't go. So as a consequence, he wasn't allowed to watch TV. His behaviors were huge. He was turning over our kitchen table. He was throwing chairs. He was hitting me, pinching me, twisting skin. My husband tried to hold him down to hold him back.

Transcript of Proceedings, Due Process Hearing at 989:4–25 (dated September 23, 2004)("DPHO Tr."). See DPHO Finding of Fact ¶ 20, at 11 ("Student refused to go to school after September 5, 2005 even though his family tried to bribe and 'walk him.' Student urinated in his bed, refused to eat and get dressed, turned over the family table and hit his parents.").

Matthew's parents requested an Individualized Education Program ("IEP") meet-ing, and one was held on September 16, 2003. At the IEP meeting, Mr. Chavez and Ms. Nelson requested a plan by which someone would come into their home to help them get Matthew to school. *See* Petitioner's Exhibits, DPH Record, Tab 6, September 16, 2003 IEP at 2–3. Tularosa Schools made clear its position that, while it would provide transportation as a related service, it would not assign staff to go into the home to get Matthew to school. *See* DPHO Finding of Fact ¶ 24, at 11. Tularosa Schools did not take any steps to determine why Matthew was refusing to go to school, nor did it develop any interventions or provide homebound services. *See* DPHO Findings of Fact ¶¶ 25 & 35, at 12–13. Tularosa Schools did not provide an IEP, BIP, homebound program, or any other educational or related service to Matthew after October 2003. *See* DPHO Finding of Fact ¶ 41, at 14 and citations therein. Mr. Chavez and Ms. Nelson informed the NMPED of this dispute in an "informal letter of complaint." Petitioner's Exhibits, DPH Record, Tab 7, Letter of Complaint at 10–11. In that letter, Mr. Chavez and Ms. Nelson stated that Matthew refused to attend school and that Tularosa Schools refused to help them get him to school. *See id.* at 10. The letter also states that Matthew was dis-enrolled from school. *See id.* at 11.

Tularosa Schools consulted with Duane Ellis, a state employee at the NMPED, regarding Matthew's refusal to go to school, and Ellis provided copies of cases in which school districts were not required to cross the threshold of a home, thereby lending SEA validation to Tularosa Schools' failure to provide any education. *See* DPHO Tr. at 228–229 (Dembrowsky). In addition to the NMPED affirming Tularosa Schools' decision to withhold special education from Matthew after September 2003, the NMPED failed to take any action

to assist the parents, despite their plea for help. On September 25, 2003, the parents mailed a certified letter to the New Mexico State Department of Education. *See* Exhibit 7 to DPHO, Letter to Department of Education at 10–11. That letter constituted notice to the NMPED that Tularosa Schools was not providing Matthew with a FAPE and was apparently incapable of providing him with FAPE. That letter states, in relevant part:

Our son ... is a 6th grade student at Tularosa Middle School. Matthew's exceptionality is autism. We have been trying to work with the school district since August 26, 2003.

Let us explain our concerns. Matthew displays many behaviors which are a component of his diagnosis. He is refusing to attend school. The Tularosa School District has refused to help us get him to school. Matthew's behavior plan is outdated and the district has refused to modify it.

\* \* \* \*

Matthew has refused to go to school since August 26, 2003. We attempted to walk him and ended with us and Matthew in a heap on the ground and a child with autism screaming bloody murder. We cannot use [a former behavior-intervention tool]. We ask for an IEP meeting to address this. We attended an IEP meeting on Sept. 16, 2003. The school ... refused to modify Matthew's behavior plan. They refused to send staff to help us.... In attendance were the Middle school principal ..., the Special Education Director ... and the schools lawyer.... We had been picking up Matthew's school work on a daily basis and instructing him at home. Yesterday [the school-district special-education director] called to tell us there would be no more homework assignments for Matthew. Matthew had been

dropped from school.... We look forward to hearing from you.

Letter to Department of Education at 10–11.

On May 25, 2004, Mr. Chavez and Ms. Nelson, pursuant to the IDEA and on Matthew's behalf, filed an administrative due-process hearing complaint against the Tularosa Schools in May 2004, alleging that Matthew was denied a FAPE, 20 U.S.C. § 1401(8). *See* DPHO at 2. The complaint alleged claims against the Tularosa Schools and the NMPED for violation of the IDEA and Section 504 of the Rehabilitation Act. *See id.*

The NMPED refused to participate in the Due Process Hearing, and the Due Process Hearing Officer, deferring to the NMPED's institutional refusal to participate, refused to accept jurisdiction over the parents' claims against the NMPED. Accordingly, the NMPED was not a party to the due-process hearing. *See* AAO Decision at 14–16.

The Due Process Hearing Officer's decision was issued on November 17, 2004. At the due-process hearing, Matthew prevailed on part of his claim against Tularosa Schools. *See* First Amended Complaint ¶¶ 1, 11, 15–16 & 63–64, at 1, 4–5 & 12. The DPHO found that Tularosa Schools had denied Matthew a FAPE. *See* DPHO at 26 ("This DPHO has found a denial of FAPE justifying an award of compensatory education for one year."). The DPHO did not, however, find a violation of Section 504. *See id.* at 28.

Tularosa Schools appealed the Due Process Hearing Officer's determination that Matthew had been denied FAPE. Mr. Chavez and Ms. Nelson appealed the Due Process Hearing Officer's determination that the Tularosa Schools' conduct did not violate Section 504 and challenged the relief that the Due Process Hearing Officer ordered. The remedy that Mr. Chavez

and Ms. Nelson sought from Tularosa Schools on appeal was "an order requiring the District to work closely with outside consultants and service providers with expertise in autism, and in behavior management techniques and approaches appropriate for children with autism." AAO Decision at 3. In addition, Mr. Chavez and Ms. Nelson appealed the determination that the Due Process Hearing Officer lacked jurisdiction over claims against the NMPED.

The Administrative Appeals Officer heard the appeal of the DPHO Decision. Matthew prevailed in his appeal to the AAO. *See* AAO Decision at 18–20; First Amended Complaint ¶¶ 1, 11, 15–16 & 63–64, at 1, 4–5 & 12. In her decision dated March 4, 2005, the AAO adopted the DPHO's Conclusions of Law, except CL 17, 20, 33, and 34, and modified CL 18. *See* AAO Decision at 4–5. Regarding Conclusion of Law 17, the AAO stated: "[T]he facts of this case do not permit a broad conclusion about the extent of the District's obligation in all cases where home services are sought based on a physical inability to attend school. To the extent the hearing officer's discussion suggests such a broad conclusion, it is inappropriate." AAO Decision at 4. The AAO modified Conclusion of Law 18 to read: "Student was denied FAPE in the 2003–2004 and 2004–2005 school year to date due to the District's failure to amend the IEP to address Student's refusal to attend school." *Id.* at 4. Regarding Conclusions 33 and 34, the AAO held that "Section 504 of the Rehabilitation Act is violated virtually any time a student is denied a FAPE under the IDEA.... Therefore, the [AAO] concludes that the denial of a FAPE to Student also violated Section 504 and its implementing regulations." *Id.* at 5.

The AAO, in accepting the DPHO's finding of fact in paragraph 41, determined that Tularosa Schools had failed to provide educational services to Matthew since October 2003. *See* DPHO Finding of Fact ¶ 41, at 14; AAO Decision at 3. She further found that Matthew was denied FAPE in the 2003–3004 and in the 2004–2005 school year because of Tularosa Schools' failure to amend the IEP to address Matthew's refusal to attend school. *See* AAO Decision at 3–5, DPHO Conclusion of Law ¶ 18, at 19.

The AAO upheld the DPHO's refusal to accept jurisdiction over the plaintiff's claims against the NMPED. There were no administrative findings of facts concerning the NMPED. *See* AAO Decision at 4; DPHO Conclusion of Law ¶ 3, at 17.

The AAO upheld the determination that Matthew was denied FAPE and also determined that Tularosa Schools' conduct violated Section 504, reversing the Due Process Hearing Officer on that issue. The AAO accordingly ordered additional remedies. In its March 4, 2005 decision, the AAO issued a twelve-point remedy specifically designed to address Matthew's educational needs. See AAO Decision at 18–20.

The AAO found that, "[a]t this time, it appears that the local education agency can implement the remedy ordered by the administration appeal officer for the Student." AAO Decision at 16. In accordance with the AAO Decision, in the spring of 2005, Tularosa contracted with Southwest Autism Network ("SWAN"), a non-profit organization affiliated with the University of New Mexico, to be involved in the provision of educational services to Matthew. *See* Defendant's Exhibit N to July 25, 2008 and August 1 Evidentiary Hearings, Puente Para Los Ninos Application at 4 (dated May 15, 2006). Also in accordance with the AAO Decision, SWAN put together a team of consultants with expertise in autism. See Transcript of Hearing on Mo-

tion for Preliminary Injunction at 55:8–56:14, 176:21–177:9, 178:7–179:3 (taken January 26, 2006)("PI Tr."); Exhibit 9 to Memo. in Support of Motion for Summary Judgment, Deposition of Patricia Osbourn at 77:5–80:21, 84:21–85:5 (taken March 23, 2006)("Osbourn Depo.")(Doc. 81–9).

The SWAN team included an expert skilled in addressing the behavioral problems of children with autism. *See* Osbourn Depo. at 79:5–13. The SWAN team also included an expert in structuring educational services to children with autism. *See id.* at 79:14–80:21. In accordance with the AAO Decision, Dr. Brian Lopez of SWAN conducted a Functional Behavioral Assessment to determine the causes of Matthew's school refusal. *See* Para Los Ninos Application at 4; Osbourn Depo. at 91: 2–11; PI Tr. at 179: 21–184:1.

In accordance with the AAO Decision, Matthew attended school in the Tularosa Schools during the summer of 2005, the 2005–2006 school year, and the summer of 2006. *See* Exhibit A to Preliminary Injunction Hearing, Educational Program Summary at 2 (dated September 20, 2005); Exhibit 5 to Plaintiffs' Motion for Stay–Put Order or Preliminary Injunction Against Defendants Tularosa and New Mexico Public Education Department and Memorandum in Support, filed December 21, 2005 (Doc. 37)("PI Motion"); Para Los Ninos Application at 4.

In August 2006, Matthew and his parents moved out of the Tularosa School District. *See* Exhibit 7 to Memo. in Support of Motion for Summary Judgment, Letter from Beverly Nelson to Dr. Keaton and John Russo at 1 (dated August 9, 2006). Matthew was not enrolled at Tularosa for 2006–2007 school year.

Before this case, there were at least two cases that were filed in New Mexico federal district court against the NMPED involving children with disabilities in the au-

tism spectrum related to failures of Local Educational Agencies ("LEA") and the State to ensure special education services and appropriate placement options. *See Carmady v. Rio Rancho Public Schools,* No. CIV 04–1134 MV/RLP (D.N.M.); *Board of Educ. of Los Lunas v. Aragon,* No. CIV 03–0299 BB/LFG, 2003 WL 25678843 (D.N.M. Aug. 18, 2003).

### PROCEDURAL BACKGROUND

Mr. Chavez and Ms. Nelson assert three claims against the NMPED pursuant to the IDEA. First, Mr. Chavez and Ms. Nelson allege that the NMPED is an agency of the State of New Mexico that monitors Tularosa Schools and other local school districts in the State for compliance with its rules and standards. *See* First Amended Complaint ¶ 8, at 3. Consequently, under the IDEA, the NMPED, as the SEA, may be directly responsible for the provision of education to students with disabilities pursuant to 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360. Second, the NMPED knew that Matthew and other students in the autism spectrum with complex behavioral needs were not, and are not, being provided appropriate educational placements by the Tularosa Schools and other public school districts, and failed to act to require that an appropriate placement be provided or to offer an appropriate placement consistent with its obligations under IDEA and, as a result, Matthew was denied FAPE. Third, in violation of IDEA, the NMPED supported Tularosa Schools' refusal to develop an appropriate program for Matthew, which constitutes an abdication of its supervisory responsibility to enforce IDEA in this state and to ensure that all children with disabilities are provided FAPE in accordance with the IDEA.

Mr. Chavez and Ms. Nelson do not dispute that the remedy which the AAO ordered, if implemented, would provide Mat-

thew with the education to which he is entitled. They "do not seek to halt or in any way delay the remedies ordered which they consider to be 'stay put' in this case." First Amended Complaint ¶ 15, at 5. Rather, they seek "judicial enforcement or amendment of the administrative decision pursuant to the [IDEA]." *Id.* ¶ 1, at 1.

There is no appeal by the NMPED of the evidence in the administrative proceedings or the findings against the Tularosa Schools and in favor of Mr. Chavez and Ms. Nelson.

As part of this civil action, Mr. Chavez and Ms. Nelson obtained the NMPED's written responses to discovery requests. Mr. Chavez and Ms. Nelson also took the depositions of state employees.

On August 1, 2006, the Court, by order, provided for judicial review of IDEA issues by instructing the parties that briefing on these issues would be timely if filed on or before August 23, 2006. On August 23, 2006, Mr. Chavez and Ms. Nelson filed their IDEA Brief in Chief. Mr. Chavez and Ms. Nelson filed their Motion for Taking of Additional Evidence concurrently with their Brief in Chief. *See* Plaintiffs' Motion for the Taking of Additional Evidence and Memorandum in Support Thereof, filed August 24, 2006 (Doc. 85) In that separated Motion, Mr. Chavez and Ms. Nelson requested a hearing on additional evidence relevant to their IDEA claim.

Mr. Chavez and Ms. Nelson's Brief–in–Chief addressed the proper interpretation and application of the IDEA. The parties requested the opportunity to submit additional briefing after any additional evidence was heard. *See* Joint Motion for Scheduling Order at 4–5, filed September 26, 2006 (Doc. 90).

In their pre-hearing brief, Mr. Chavez and Ms. Nelson set forth a preliminary statement as to the limitations of argument. Mr. Chavez and Ms. Nelson argued that the granting of their Motion for Taking of Additional Evidence would allow them to present evidence in support of their claims against the NMPED. Mr. Chavez and Ms. Nelson maintained that their preliminary brief is based on the very limited evidence in the administrative record. *See* Plaintiffs' Brief at 8. Mr. Chavez and Ms. Nelson did not offer the evidence acquired in this case in its brief in chief. Instead, Mr. Chavez and Ms. Nelson requested a full evidentiary hearing before the Court. Mr. Chavez and Ms. Nelson stated that, in this posture, any decision against Mr. Chavez and Ms. Nelson on IDEA claims against the NMPED would be premature until such time as the Court conducts an evidentiary hearing and allows Mr. Chavez and Ms. Nelson to fully present their evidence in support of their claims against the NMPED. *See id.*

Specifically, Mr. Chavez and Ms. Nelson requested the opportunity to present evidence that the NMPED was fully aware that children with disabilities in the autism spectrum whose disabilities include complex behaviors are not being provided FAPE throughout the state. In addition, Mr. Chavez and Ms. Nelson sought to submit evidence that the NMPED knew or should have known that Tularosa Schools had no self-contained classroom and had not placed a student in a residential private school. Mr. Chavez and Ms. Nelson also requested the taking of additional evidence regarding the lack of appropriate placements available to Matthew in New Mexico. Mr. Chavez and Ms. Nelson further represented that they would show, by additional evidence, that the NMPED was fully aware of the AAO's order as well as Tularosa School's noncompliance, and failed to act to require enforcement consistent with its supervisory and responsibility for direct service.

On October 4, 2006, the NMPED submitted a pre-hearing answer brief on Mr. Chavez and Ms. Nelson's claim under the IDEA. The NMPED did not object to Mr. Chavez and Ms. Nelson's motion for a hearing on additional evidence relevant to Mr. Chavez and Ms. Nelson's IDEA claim.

The pre-hearing brief set forth the NMPED's position on Mr. Chavez and Ms. Nelson's IDEA claim based on the evidence then of record or known to the NMPED through discovery in this action. In the NMPED's Pre–Hearing IDEA Answer Brief, the NMPED stated that it anticipated submitting a post-hearing brief setting forth its final response to Mr. Chavez and Ms. Nelson's IDEA Brief–in–Chief and position on Mr. Chavez and Ms. Nelson's IDEA claim.

The Court held a two-day evidentiary hearing on July 25, 2008 and August 1, 2008. At the hearing, the parties stated that they wished to supplement the record with the exhibits that they would be offering at the hearing. *See* Transcript of Evidentiary Hearing at 37:3–9 (July 25, 2008)(Doc. 157)("July 25 Tr.")(Court, Stewart & Wechsler). At the hearing, the Court explained its procedure for handling the exhibits. The Court's admission of exhibits for purposes of the hearing did not reflect a determination that the Court would supplement the record with those exhibits. *See* July 25 Tr. at 35:10–14 (Court).

Mr. Chavez and Ms. Nelson asserted at the Evidentiary Hearing that their evidence would establish that "as of the receipt of the September 23 letter and the subsequent phone call, the department had reason to know that the child was not in school." July 25 Tr. at 30:14–18 (Stewart). The NMPED stated that there is no direct role it can play in the administrative hearings because these hearings raise issues of direct services, which the local districts must provide. *See* July 25 Tr. at 22:19–25 (Wechsler). Thus, the NMPED is required to step in and provide direct services only where there has been a finding from the state that there has been a failure. *See id.* at 33:22–25 (Wechsler). Moreover, the NMPED accepts that, with regard to Tularosa Schools, the AAO's determination was correct. *See id.* at 34:3–5 (Wechsler).

Since the hearing, the parties have submitted supplemental briefing. *See* Plaintiffs' Supp. Brief; Defendant's Supp. Brief. In their brief, Mr. Chavez and Ms. Nelson argue that the evidence that they presented at the evidentiary hearings establishes that (i) the NMPED had notice that Matthew Chavez was a child with a disability who was being excluded from school as a result of his disability; and (ii) the NMPED's actions and inactions failed to insure that Matthew Chavez received FAPE as required under the IDEA. *See* Plaintiffs' Supp. Brief at 1.

Mr. Chavez and Ms. Nelson also contend that they have offered evidence that, on a "more 'macro' level, the NMPED did not have any 'systems' in place calculated to ensure that Matthew would receive FAPE." *Id.* at 2. Thus, they argue that the NMPED's system of monitoring during the 2003–2004 and 2004–2005 school years were not calculated to ensure appropriate supervision of Tularosa Schools. *See id.* Furthermore, Mr. Chavez and Ms. Nelson argue that they have presented evidence that the NMPED knew that a small school district like Tularosa Schools was not able to respond to the needs of children with autism, especially when those needs resulted in behavioral concerns. *See id.*

Mr. Chavez and Ms. Nelson ask the Court to use its "broad authority to determine equitable relief under IDEA" and note that the IDEA authorizes courts to " 'grant such relief as the court determines

is appropriate.'" *Id.* at 9 (quoting 20 U.S.C. § 1415(i)(2)(C)(iii) (IDEA 1997); 20 U.S.C. § 1415(i)(2)(C)(iii) (IDEA 2004)). Pursuant to this equitable authority, Mr. Chavez and Ms. Nelson request that the Court grant $80,000.00 in reimbursement for Ms. Nelson's services in home schooling her son during the 2003–2004 and 2004–2005 school years. *See* Plaintiffs' Supp. Brief at 11. They also request that the Court "require NMPED establish a hotline number so that parents whose children with disabilities are not able to attend school can contact NMPED to request assistance from NMPED." *Id.* at 12.

The NMPED, on the other hand, contends that Mr. Chavez and Ms. Nelson received a remedy for compensatory educational services and are not entitled to any further remedy. *See* Defendant's Supp. Brief at 11. The NMPED argues that the Court's Memorandum Opinion and Order of October 19, 2006 (Doc. 96)("Oct. 19 MOO")[2] implicitly obviates a determination whether the NMPED was subject to jurisdiction in the administrative hearing because the Court held that Mr. Chavez and Ms. Nelson were not required to exhaust the State Complaint Review Procedure. *Id.* at 13. The NMPED also argues that the Court's scope of review is limited to its appellate review of the due-process hearing under 20 U.S.C. § 1415 because the DPHO decision and the AAO decision were issued pursuant to that section of the statute. *See* Defendant's Supp. Brief at 13.

The NMPED argues that it is not liable for further relief to Matthew Chavez for three reasons: (i) Mr. Chavez and Ms. Nelson have failed to show that Tularosa Schools was unable to provide a FAPE to Matthew Chavez; (ii) even if Tularosa Schools were unable to provide FAPE, Mr. Chavez and Ms. Nelson have failed to provide adequate notice and a reasonable opportunity to compel compliance; and (iii) Mr. Chavez and Ms. Nelson have failed to establish that any alleged deficiency in the NMPED's monitoring resulted in a denial of FAPE to Matthew Chavez. *See* Defendant's Supp. Brief at 14. Rather, they argue, Matthew Chavez has received the educational benefits to which he is entitled under the IDEA. *See id.* The NMPED also presents policy arguments to explain why judgment in Mr. Chavez and Ms. Nelson's favor would impose financial and administrative burdens on the NMPED that Congress never intended. *See id.* at 30.

Mr. Chavez and Ms. Nelson's remaining claims, including claims the ADA and under Section 504 of the Rehabilitation Act, provide for the right to a jury trial. The Court will not address these claims in this opinion.

## *LAW REGARDING THE IDEA*

The IDEA provides a comprehensive scheme to ensure provision of special education to students with disabilities. IDEA's overarching purpose is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). IDEA has seen multiple amendments, including a recent amendment effective July 2005. IDEA as amended in 1997 governs this case.

---

**2.** The NMPED made reference to the October 23, 2006 Memorandum Opinion and Order. The Court assumes, based on the context, that the NMPED means the October 19, 2006 MOO. Later in its brief, the NMPED refers to this MOO as coming out on October 26, 2006. The Court will assume that in both cases, the NMPED was talking about the October 19, 2006 MOO.

It has been recognized that the statutory scheme now called the IDEA embodies "a strong federal policy to provide an appropriate education for every [disabled] child." *Kruelle v. New Castle County School District*, 642 F.2d 687, 690 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit in *Kruelle v. New Castle County School District* cites various passages of legislative history in explaining that Congress passed the Act to further three interrelated purposes. *See* 642 F.2d at 690. First, "Congress sought to secure by legislation the right to a publically supported equal educational opportunity which it perceived to be mandated by *Brown v. Board of Education*, and explicitly guaranteed with respect to handicapped children by two seminal federal cases, *Pennsylvania Association for Retarded Children v. Pennsylvania* and *Mills v. Board of Education*." *Kruelle v. New Castle County School District*, 642 F.2d at 690–91 (citing S.Rep. No. 168, 94th Congress, 1st Sess. 6, reprinted in U.S.Code Cong. & Admin.News 1425, 1430)(legislative history of Education Act, P.L. 94–142)(footnote omitted).

Second, "Congress intended the provision of education services to increase the personal independence and enhance the productive capacities of handicapped citizens." *Kruelle v. New Castle County School District*, 642 F.2d at 691 (citation and footnote omitted). Third, Congress "acknowledged the need for an expanded federal fiscal role to aid state compliance with the court decisions and to assure protection for the rights of handicapped children." *Id.* According to the Third Circuit in *Kruelle v. New Castle County School District*, Congress employed a cost-benefit philosophy and decided that, "[i]n-

stead of saddling the public agencies and taxpayers with the enormous expenditures necessary to maintain the handicapped as lifelong dependents in a minimally acceptable institutionalized existence, Congress reasoned that the early injection of federal money and provision of educational services would remove this burden by creating productive citizens." *Id.* (citing S.Rep. No. 168, 94th Congress, 1st Sess., reprinted in U.S.Code Cong. & Admin.News, 1425, 1434).

### 1. *Basic Structures of the IDEA.*

The IDEA is, on the surface, a funding statute. The Supreme Court of the United States has pointed out, however, that it "confers upon disabled students an enforceable substantive right to public education in participating States." *Honig v. Doe*, 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).[3] The IDEA is administered through the Office of Special Education Programming ("OSEP") of the United States Department of Education. *See* 20 U.S.C. §§ 1406, 1417. States decide whether to participate in the IDEA and accept the funds that it provides. At present, all states participate. New Mexico was the last state to accept federal funding under the IDEA. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 183–184, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The IDEA defines the term "free appropriate public education":

The terms "free and appropriate public education" means special education and related services that—

(A) have been provided at public expense, under public supervision and direction, and without charge;

---

**3.** *Honig v. Doe* discusses the Education For all Handicapped Children Act, which was the predecessor to the IDEA. The Education for All Handicapped Children Act was reorganized and renamed as the IDEA in 1990.

(B) meet the standards of the State educational agency;

(B) include an appropriate preschool, elementary, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education programs required under section 1414(d) of [IDEA].

20 U.S.C. § 1401(8). *See* 34 C.F.R. § 300.13.

The Supreme Court has not spoken definitely about whether, as a result of states' responsibilities under the IDEA, district courts may require SAEs to provide services directly to disabled children when the LEA has failed to do so. In *Honig v. Doe*, the Supreme Court divided equally on the question. *See* 484 U.S. at 607, 108 S.Ct. 838 (affirming, through an equally divided panel, the circuit court's ruling in *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1491–92 (9th Cir.1986), that district courts may order SAEs to provide direct services). The United States Court of Appeals for the Ninth Circuit in *Doe by Gonzales v. Maher* held that a SEA is responsible for directly providing a child with FAPE when: (i) the LEA has breached its responsibility of providing services to the child; (ii) the SEA had notice of non-compliance; and (iii) the SEA had a reasonable opportunity to compel compliance before relief was ordered against the state. *See* 793 F.2d at 1491–92. The Ninth Circuit, in *Doe by Gonzales v. Maher*, interpreted the text of the relevant statute, explaining:

Although the state stresses the language in 20 U.S.C. § 1414(d)(1) (1982) that speaks of the state's responsibility for direct action when the locality fails to maintain "programs" of free appropriate education, section 1414(d)(3) specifically requires direct action when a local education agency "has one or more handicapped children who can best be served by a regional or State center designed to

meet the needs of such children." *Id.* § 1414(d)(3) (emphasis added). It would seem incontrovertible [sic] that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child "can best be served" on the regional or state level. *See Kruelle v. New Castle County School District*, 642 F.2d 687, 696–99 (3d Cir.1981) (holding that the district court did not err in assigning to the state board of education the responsibility of providing a child with an appropriate public education); *Georgia Association of Retarded Citizens v. McDaniel*, 511 F.Supp. 1263 (N.D.Ga.1981) (holding that 20 U.S.C. § 1414(d) places the responsibility on the state educational agency either to make sure that local agencies provide adequate educational services to handicapped children, or to provide directly such services themselves), aff'd, 716 F.2d 1565 (11th Cir.1983), *vacated on other grounds*, 468 U.S. 1213, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984); *cf. S–1 v. Turlington*, 635 F.2d 342, 350 (5th Cir.) (Unit B) (holding that a state agency can be enjoined to intervene directly in a local expulsion proceeding), *cert. denied*, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

*Doe by Gonzales v. Maher*, 793 F.2d at 1491–92. As of 1997, Congress revised the statutory language to which the Ninth Circuit referred in *Doe by Gonzales v. Maher* and moved it to another section. The statute's language now reads:

A State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that

State agency is responsible, if the State educational agency determines that the local educational agency or State agency, as the case may be—

(A) has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;

(B) is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section;

(C) is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs; or

(C) has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children.

(2) Manner and location of education and services

The State educational agency may provide special education and related services under paragraph (1) in such manner and at such locations (including regional or State centers) as the State educational agency considers appropriate. Such education and services shall be provided in accordance with this subchapter.

20 U.S.C. § 1413(g)(1)(2005). The differences in organization in wording are not significant, and the reasoning in *Doe by Gonzales v. Maher* remains unaffected. The language upon which the Ninth Circuit relied—the language that calls for direct services when there is a student "who can best be served by a regional or State program"—remains in the statute.

In *Doe by Gonzales v. Maher*, the Ninth Circuit also said the state was on notice when the child's parents or guardians gave "the responsible state officials adequate notice of the local agency's noncompliance [with IDEA requirements]." 793 F.2d at 1492. The Ninth Circuit did not further specify what form this adequate notice must take, and did not imply that parents must wait until the LEA has failed to comply with a due-process hearing officer's order or that there must be a due-process hearing before the state incurs any responsibility.

Given that the Supreme Court, in an equally divided panel, affirmed the judgment on the issue whether "a court may order a State to provide services directly to a disabled child where the local agency has failed to do so," *Honig v. Doe*, 484 U.S. at 329, 108 S.Ct. 592, the reasoning in *Doe by Gonzales v. Maher* did not become binding on the other circuits. *See Honig v. Doe*, 484 U.S. at 329, 108 S.Ct. 592 ("Because we are equally divided on the question whether a court may order a State to provide services directly to a disabled child where the local agency has failed to do so, we affirm the Court of Appeals' judgment on this issue as well."). The Supreme Court has stated that affirmance by an equally divided court does not have precedential value and does not settle any question of law. *See Neil v. Biggers*, 409 U.S. 188, 191–92, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Etting v. Bank of United States*, 11 Wheat. 59, 78, 6 L.Ed. 419 (1826)(stating "the principles of law which have been argued, cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it"). The reasoning in *Doe by Gonzales v. Maher* is therefore not binding upon the Court, and the Court uses it only as persuasive authority.

■ Courts have ordered the SEAs to step in and provide direct services when an LEA is unable or unwilling to do so. *See Kruelle v. New Castle County School District*, 642 F.2d at 699 (explaining that

state was responsible for providing residential program for disabled child when the LEA could not provide the necessary program); *St. Tammany Parish School Bd. v. State of Louisiana,* 142 F.3d 776, 785 (5th Cir.1998)(stating that the SEA is responsible for paying the cost of interim residential placement when the LEA was unable to provide adequate services for an autistic child). District courts have broad discretion to order the relief appropriate to ensure that the child is provided with FAPE, which includes ordering remedies against the SEA when necessary. *See Gadsby v. Grasmick,* 109 F.3d 940, 954–55 (4th Cir.1997).

In *Kruelle v. New Castle County School District,* the United States Court of Appeals for the Third Circuit ordered the SEA to provide residential placement for a disabled child who had been denied FAPE because the district school was unable to meet his educational needs. See 642 F.2d at 696. Likewise, in *St. Tammany Parish v. State of Louisiana,* the United States Court of Appeals for the Fifth Circuit held that nothing in IDEA prevents courts from holding the SEA liable for equitable relief and that the court has discretion to assign such liability to the SEA. *See* 142 F.3d at 784.

■ Under the IDEA, once the LEA is unable to provide FAPE, the SEA can be elevated to the public agency that "may be" responsible for providing direct services to the student. *See* 34 C.F.R. §§ 300.360 to 300.372. The SEA, not the LEA, is responsible for assuring that every child disabled within the meaning of the IDEA is provided with FAPE. *See Beard v. Teska,* 31 F.3d 942, 953 (10th Cir.1994), *abrogated* on other *grounds* by *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *St. Tamma-*

*ny Parish Sch. Bd. v. State of Louisiana,* 142 F.3d 776, 784 (5th Cir.1998). Thus, the SEA is not solely a supervisory agency, but is rather the "central point of accountability": for ensuring that students receive FAPE. *See Kruelle v. New Castle County Sch. Dist.,* 642 F.2d at 697.

■ The IDEA confers an "enforceable substantive right to public education." *Honig v. Doe,* 484 U.S. at 310, 108 S.Ct. 592 (referencing *Board of Education of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 176 n. 1, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). Through the IDEA, Congress chose a highly detailed procedural scheme to ensure that children with disabilities receive the special education and related services they need. *See Board of Education of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. at 205–206, 102 S.Ct. 3034. The Honorable Christina Armijo, United States District Judge for the District of New Mexico, has recognized that the IDEA scheme of ensuring that all children with disabilities receive a FAPE involves parents, schools, and states: "The IDEA additionally envisions a collaborative effort by which parents, educators, state and others work together not just to create a personalized IEP through which the individual child will receive the free appropriate public education to which he or she is entitled, but also to effect systemic change." *Sanders v. Santa Fe Public Schools,* 383 F.Supp.2d 1305, 1310 (D.N.M.2004).

■ The NMPED is the SAE for New Mexico. The AAO acts for it as the final state administrative review for IDEA due process. *See* 20 U.S.C. § 1415(g). The burden of proof at an IDEA administrative hearing is on the party challenging an IEP or otherwise seeking relief. *See Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)("The burden of proof in an administrative hear-

ing challenging an IEP is properly placed upon the party seeking relief."). The IDEA regulations define autism in pertinent part as

a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.

34 C.F.R. § 300.7(e)(1)(i) (2006).

### 2. *Standard of Review for IDEA Administrative Decisions.*

The United States District Court undertakes a "modified de novo" review of the underlying IDEA administrative decisions. *Erickson v. APS*, 199 F.3d 1116, 1120 (10th Cir.1999). The district court must "independently review the evidence contained in the administrative record, accept and review additional evidence if necessary, and make a decision based on a preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Murray v. Montrose County Sch. Dist. RE–1J*, 51 F.3d 921, 927 (10th Cir.1995). In the context of New Mexico's two-tier system of IDEA administrative proceedings, the United States Court of Appeals for the Tenth Circuit recognized the difficulty that can arise when the DPHO and the AAO—or their equivalents in other states—disagree as to findings of fact. The Tenth Circuit has directed that the district court is to give due weight to the AAO's decision on issues with which he or she disagreed with the DPHO unless the DPHO's decisions rested on credibility determinations. *See Erickson v. APS*, 100 F.3d at 1121. The district

court reviewing the final state administrative IDEA decision reviews questions of law de novo. *See O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233*, 144 F.3d 692, 698 (10th Cir.1998).

### 3. *Supplementation of the Administrative Record.*

The IDEA provides that the need for additional evidence is within the court's discretion. The IDEA apparently requires, however, an evidentiary hearing to determine what evidence the court should consider adding to the record. *See* 20 U.S.C. § 1415(i)(2)(C)(ii)(stating that the court "shall hear additional evidence at the request of a party"). In light of this mandatory language, the Court observes that there is some tension between 20 U.S.C. § 1415(i)(2)(C)(ii) and the exhaustion requirement under the IDEA. The Court believes, however, that the tension is resolved through the "modified de novo review" of the Plaintiffs' IDEA claims. *Murray v. Montrose County Sch. Dist. RE–IJ*, 51 F.3d 921, 927 (10th Cir.1995)(explaining that "[t]he district court must therefore independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below.").

### 4. *Enforcing Administrative Orders Under the IDEA.*

In its October 19, 2006 MOO, the Court considered at length whether a party can bring an action to enforce the administrative decision. The Court agreed with Honorable Christina J. Armijo, United States District Judge, who explained, in *Miller v. Board of Education of the Albuquerque Public Schools*:

The Court also must keep in mind that this case presents an unusual situation where the Plaintiffs are appealing from an administrative proceeding at which they prevailed and received some form of equitable relief as to most of the substantive issues.... [T]he IDEA does not give Plaintiffs the right to bring a civil action for judicial review of the administrative proceedings conducted pursuant to that statute unless and until they are "aggrieved" by the result of those proceedings. *See* 20 U.S.C. § 1415(i)(2)(A); *Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir. 1987). It follows that there is no basis for the Court to review evidentiary rulings with respect to those issues on which the AAO found in Plaintiffs' favor and awarded adequate relief.

\* \* \* \*

That a student is aggrieved by a school district's failure to comply with an administrative tribunal's decision in favor of the student is a separate and distinct claim that may rest on an entirely different legal theory than the relatively straightforward IDEA.... *See, e.g., Robinson*, 810 F.2d at 1274–75 (concluding that such non-compliance can be addressed under 42 U.S.C. § 1983).

2006 WL 2786759 at \*\*14, 16. *See* Oct. 19 MOO at 14. The Court also declined to decide whether Tenth Circuit law would allow a party to bring an action under 42 U.S.C. § 1983 to enforce compliance with an administrative order that was not being implemented. *See* Oct. 19 MOO at 14 & 19 ("The Tenth Circuit might well find, if the issue was presented to it, that, because, the Plaintiffs have exhausted all administrative remedies and the state has still not complied with the final order, § 1983 is available in such a limited situation.").

## ANALYSIS

Regarding the IDEA claim against the NMPED, the Court now finds that the NMPED breached its duties under the IDEA to provide Matthew Chavez with FAPE for the 2003–2004 and 2004–2005 school years. Specifically, the NMPED had adequate notice that Matthew Chavez was not receiving any educational services and that Tularosa Schools was violating its duties. Rather than taking measures to compel Tularosa Schools to come into compliance with the IDEA, the NMPED took the stance that it need do nothing. The NMPED cannot properly wash its hands of its responsibility to make certain that Matthew Chavez was provided direct services.

While the Court finds that NMPED violated the IDEA, the Court also finds that this case does not present circumstances under which the Court can fashion an appropriate remedy. Thus, the Court will not grant a remedy.

## I. THE SCOPE OF THE RECORD.

The Court must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Murray v. Montrose County Sch. Dist. RE–IJ*, 51 F.3d at 927. When the Court received additional evidence, it explicitly refrained from ruling on which evidence would become part of the record and which evidence would be disregarded.

The Court has reviewed the administrative record, and has relied primarily on that record. The Court has, however, considered other argument, testimony, and exhibits that the parties have proffered since the creation of the administrative record. Specifically, the Court considered

the following in addition to what is contained in the original administrative record: (i) July 25, 2008 Tr. at 22:19–25 (arguing that "there is no role for the NMPED to play in the administrative process")(Wechsler); 30:14–18 (arguing that "as of the receipt of the September 23 letter and the subsequent phone call, the department had reason to know that the child was not in school")(Stewart); 33:22–25 (arguing that the NMPED is required to step in and provide direct services only where there has been a finding from the state that there has been a failure)(Wechsler); 34:3–5 (conceding that, with regard to Tularosa Schools, the AAO's determination was correct)(Wechsler); 35:10–14 (noting that the Court's admission of exhibits for purposes of the hearing did not reflect a determination that the Court would supplement the record with those exhibits)(the Court); 37:3–9 (parties expressing intention to supplement the record)(Court, Stewart & Wechsler); 61:6–10 (Ms. Nelson's testimony on her telephone conversation with Duane Ellis regarding the September 25 Complaint Letter)(Nelson); 92:9–11 (testifying that Matthew's 2002–2003 school year was successful)(Nelson); 162:19–165:3 (testifying about Tularosa School's ability to provide services to students such as Matthew Chavez)(Dembrowsky); 185:2–5, 15–17, 20–25 (testifying about the pay that educational assistants received in Tularosa during the time period in which Matthew Chavez was being denied educational services)(Dembrowsky); 186:1–187:5; and 187:23–188:12; (ii) Defendant's Exhibit N to July 25, 2008 and August 1 Evidentiary Hearings, Puente Para Los Ninos Application; (iii) Transcript of Hearing on Motion for Preliminary Injunction 55:8–56:14 (discussing the formation of the SWAN team of consultants); 176:21–177:9 (discussing the formation of the SWAN team of consultants); 178:7–179:3 (discussing the formation of

the SWAN team of consultants); 179:21–184:1 91:2–11(discussing Dr. Brian Lopez' behavioral assessment of Matthew Chavez); (iv) Exhibit 9 to Memo. in Support of Motion for Summary Judgment, Deposition of Patricia Osbourn at 77:5–80:21 (testifying regarding the SWAN team of consultants); 79:5–13; 79:14–80:21 (testifying about the SWAN team and the expert in structuring educational services to children with autism); 84:21–85:5 (testifying regarding the SWAN team of consultants); 91:2–11 (discussing Dr. Brian Lopez' behavioral assessment of Matthew Chavez)(taken March 23, 2006)("Osbourn Depo."); (vi) Exhibit A to Preliminary Injunction Hearing, Educational Program Summary at 2 (dated September 20, 2005); and (v) Exhibit 7 to Memo. in Support of Motion for Summary Judgment, Letter from Beverly Nelson to Dr. Keaton and John Russo at 1 (dated August 9, 2006). These specific items of additional evidence are hereby incorporated into the record. All other items proffered to the Court were not helpful to the Court's decision and are not made a part of the administrative record.

## II. THE AAO'S FINDINGS AS TO TULAROSA SCHOOLS ARE NOT IN DISPUTE AND THE COURT WILL ADOPT THEM AS ITS OWN.

The AAO's findings as to Tularosa Schools are not subject to dispute. The issues remaining for the Court to determine are (i) whether the DPHO and the AAO erred in declining to exercise jurisdiction over the NMPED; and (ii) whether the NMPED violated the IDEA by not compelling Tularosa Schools to comply to provide FAPE to Matthew Chavez, or by not stepping in and itself providing education services to Matthew Chavez. *See* September 10, 2007 Memorandum Opinion and Order (Doc. 127)("Sept. 10 MOO").

This case is not an opportunity for the parties to relitigate what happened between Tularosa Schools and the Plaintiffs. The Due Process Hearing Officer found that Tularosa Schools did not provide any educational related services to Matthew after October 2003. *See* DPHO Findings of Fact ¶ 24, at 11. The AAO adopted this finding of fact, and the Court will assume the finding of fact is correct. Specifically, the Court will assume that the AAO, in accepting the DPHO's findings of fact, correctly determined that Tularosa Schools had failed to provide educational services to Matthew since October 2003. *See* DPHO Findings of Fact ¶¶ 18 & 41, at 15; AAO Decision at 3–4. Mr. Chavez and Ms. Nelson have expressly agreed with that finding, *see* Plaintiffs' Brief at 16, and the NMPED has not opposed that finding and conclusion or attempted to argue that it is incorrect. Indeed, the NMPED has encouraged Tularosa Schools to comply with the AAO's decision. *See* July 25, 2008 Tr. at 34:3–6 (Wechsler).

The AAO did not make findings as to the NMPED. Thus, in the posture of this case, the Court will: (i) make its own findings of fact as to the NMPED; and (ii) make de novo determinations of law in accordance with IDEA standards and Tenth Circuit precedent.

## III. THE DPHO AND THE AAO HAD JURISDICTION TO HEAR CLAIMS AGAINST *THE NMPED.*

■ The Due Process Hearing Officer concluded that she did not have jurisdiction over claims made against the NMPED and that the NMPED was not a party. *See* DPHO Conclusion of Law ¶ 3, at 17. The question whether NMPED is subject to the administrative due-process procedures available under IDEA is a question of law. As such, the Court will review the AAO conclusions de novo. *See Sanders v.*

*Santa Fe Pub. Sch.,* 383 F.Supp.2d at 1309 (stating that court applies de novo review to questions of law under IDEA). The Court believes that, as a party having potential liability under the IDEA, the NMPED belonged in the due-process hearing.

The NMPED gives two explanations for excluding itself from due-process proceedings. The NMPED believes that: (i) the issues raised against it are the issues to be considered in due-process proceedings; and (ii) no authority exists to have the SEA in due-process proceedings unless the SEA is providing direct service to the affected student.

The Court disagrees with the NMPED's reasoning. Tularosa Schools failed to provide Matthew with any educational services for the 2003–2004 and 2004–2005 school years. NMPED is accused of being either complicit in that denial, or at least responsible for this resulting denial of FAPE, as it knew or should have known of the failures in Tularosa Schools, in particular for Matthew, and failed to do anything to require creation of an appropriate placement or provision of education.

Under the facts of this case, NMPED is a public agency that may be responsible for "direct service" to Matthew. Failure to include the NMPED at the administrative level defeats the purpose of the exhaustion of administrative remedies under the IDEA. Because no evidence against the NMPED was allowed in the administrative proceedings, the Court has been required to take additional evidence on this matter. The NMPED's election to sit out is analogous to a party being named in a lawsuit but deciding not to participate. The party has the right not to participate, but the party may end up being bound by determinations made in the lawsuit.

Moreover, Mr. Chavez and Ms. Nelson have raised a question regarding whether

the NMPED, acting in contravention of its enforcement role in the federal/state/local scheme, supported Tularosa Schools' refusal to provide appropriate educational services to Matthew by providing administrative case decision citations to Tularosa Schools. *See* DPHO Tr. at 228:8–229:11 (Dembrowsky, Stewart). To find that the administrative officers have no authority to decide whether an SEA violated the IDEA produces an unreasonable result.

The due process requested against the NMPED concerned the failure to provide an appropriate educational placement and resulting denial of FAPE. 34 C.F.R. § 300.507(a) and § 300.503(a)(1) specify both matters as within the scope of due process requests. While the NMPED was not at the IEP meetings resulting in the IEPs that failed to provide FAPE, NMPED is a "public agency" as IDEA defines that term. The NMPED thus has a legal responsibility under the IDEA in circumstances such as these where the LEA either refuses or is unable to meet the child's needs. *See* 34 C.F.R. § 300.22; *id.* § 300.507(a)(1)(providing for due-process hearings to address disputes between parents and "public agencies"). The Court therefore believes that, under the IDEA, as implemented by its regulatory language, the term "public agencies" implies applicability of due process for complaints against the NMPED.

The NMPED's justifications imply that it is aware of authority requiring its participation in due process when the SEA is providing direct services to the child. *See Mo. Dep't of Elem. and Secondary Educ. v. Springfield R–12*, 358 F.3d 992, 999–1000 (8th Cir.2004); *Bitsilly v. BIA*, 253 F.Supp.2d 1257, 1265 (D.N.M.2003). The NMPED's argument, however, is that, because it has not assumed that role, it is exempt from due process. Not only does the language not support NMPED's con-

struction, but the public policy implications of NMPED's argument do not support this interpretation. To avoid subjecting itself to due-process proceedings, the NMPED's construction supports avoidance of its obligations to step in and provide FAPE for students whom the LEAs are failing to serve.

If the NMPED fails to intervene, and either compel the LEA's compliance with the IDEA or provide direct services where it is required to do so, then it is subject to a claim. The NMPED is a properly named defendant in this lawsuit, and the Due Process Hearing Officer had jurisdiction. The Court therefore disagrees with DPHO Conclusion of Law ¶ 3 that the Due Process Hearing Officer did not have jurisdiction over claims against the NMPED. *See* AAO Decision at 13–15.

The Court also rejects the argument that the October 16 MOO implied, in any way, that the Court need not decide this issue. According to the NMPED, when the Court ruled that Mr. Chavez and Ms. Nelson were not required to exhaust the State Complaint Review Procedure before bringing suit to appeal the AAO's order, *see* Oct. 16 MOO at 17, it obviated a determination of whether the NMPED was subject to the administrative proceedings below. Again, the NMPED seems to want to argue for a host of formal hurdles that must be overcome to sue it for violating the IDEA. While some formal hurdles certainly exist, the Court does not see any persuasive reason to erect other ones that are found nowhere in the IDEA's text or history.

## IV. THE NMPED DENIED MATTHEW FAPE.

The heart of Mr. Chavez and Ms. Nelson's claim is that the NMPED had an obligation to compel Tularosa Schools to provide educational services to Matthew

Chavez or to provide direct educational services to Matthew Chavez, because it had notice that Tularosa Schools was unwilling, unable, or both, to provide Matthew Chavez with FAPE. Mr. Chavez and Ms. Nelson also argue that the NMPED failed to provide an adequate continuum of alternative placements for Matthew, to ensure adequate services to Matthew as a child with autism, and to ensure implementation of the enforcement order. The Court finds that it is unnecessary to decide whether the NMPED failed to ensure an adequate continuum of alternative placement or adequate services to Matthew as a child with Matthew. The Court also reiterates its prior holdings that it does not have jurisdiction to hear an action to enforce the AAO decision.

## A. THE NMPED FAILED IN ITS OBLIGATION TO EITHER COMPEL TULAROSA SCHOOLS TO PROVIDE FAPE OR TO PROVIDE DIRECT SERVICES TO MATTHEW.

██ The Court is not persuaded that the NMPED could, upon finding out that Tularosa Schools was providing no educational services to Matthew Chavez, refuse to do anything to encourage Tularosa Schools to comply with the IDEA, or fail to step in and provide direct services. Under the IDEA, the SAE "shall" provide direct services if the SAE "determines" that the LAE "is unable to establish and maintain programs of free appropriate public education," or "has 1 or more children with disabilities who can best be served by a regional or State program or

service delivery system designed to meet the needs of such children." 20 U.S.C. § 1413(g)(1).

The language, structure, and history of the IDEA lead the Court to believe that, when an SEA finds out that an LEA, in contravention of the IDEA, refuses to offer educational services to a student with disabilities, and the SEA either does nothing, or affirmatively encourages the LEA in its noncompliance with the IDEA, the SEA may be liable for the violation. The IDEA frames the SEAs' obligation to provide direct services under some circumstances in mandatory terms—they "shall" provide direct services if they make certain determinations, as listed in the statute. Moreover, the IDEA speaks generally of the SEAs' responsibilities in § 1412:

State educational agency responsible for general supervision

(A) In general

*The State educational agency is responsible for ensuring that—*

(i) *the requirements of this subchapter are met;* and

(ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State or *local agency*—

(I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and

(II) meet the educational standards of the State educational agency.

20 U.S.C. § 1412 (effective July 1, 1998 to June 30, 2005)(emphasis added).[4] Section

---

4. To avoid confusion, the Court notes that it is applying the 1997 amendments in this case. Thus, unless otherwise noted, its citations to the statute are from that version. The language cited here regarding the SEA's general responsibility of SEAs has not changed substantively for many years. For example, the

original version, under the Education for All Handicapped Children Act of 1975, read:

The state educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such

1412 indicates Congress' intent to centralize, through the SEAs, responsibility for the public education of children with disabilities in the states. *See Kruelle v. New Castle County School District,* 642 F.2d at 696 ("Both a general, congressional perception of the state's primary responsibility to provide a publicly-supported education for all children and a specific intent to centralize this responsibility underlie [20 U.S.C. § 1412].")(footnote omitted).

The Third Circuit in *Kruelle v. New Castle County School District* pointed out that the legislative history of the Education for All Handicapped Children Act— what was later reorganized and renamed as the IDEA—supports the proposition that "the full committee considered the establishment of a single agency on which to focus responsibility for assuring the right to education of all handicapped children to be of paramount importance." 642 F.2d at 696. The portion of the legislative history upon which the Third Circuit relied states:

> "Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a central agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is

squarely the responsibility of one agency."

S.Rep. No. 168, 94th Congress, 1st Sess. 24, reprinted in U.S.Code Cong. & Admin.News 1425, 1448 (as quoted in *Kruelle v. New Castle County School District,* 642 F.2d at 696).

The Ninth Circuit in *Doe by Gonzales v. Maher,* articulated helpful standards for evaluating when SAEs are required to deliver direct educational services. The Ninth Circuit, in *Doe by Gonzales v. Maher* observed that, where the LEA either cannot or will not provide FAPE to a child, then the child will "best be served" by having a state or regional center provide services. *Doe by Gonzales v. Maher,* 793 F.2d at 1491–92 ("[W]henever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level."). In the Court's view, the IDEA can be properly read to require SEAs to ensure that the LEAs provide services or to provide direct services where the LEAs are unwilling to do, given the fact that Congress centralized responsibility for compliance with the IDEA. Under § 1412, the SEA "is responsible for assuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State or local agency . . . meet the educational standards of the state educational agency." 20 U.S.C. § 1412.

Given that the SEAs are ultimately responsible for assuring that the requirements of the Act are met, *see id.,* 20 U.S.C. § 1413(h)(1)(D)—or its successor, which

---

programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency.

20 U.S.C. § 1412 (1975). The changes to this language since the 1975 Act have been largely cosmetic, such as changing the phrase "handicapped children" to "children with disabilities" to comport with modern usage. Otherwise, the import of § 1412 remains the same.

reads identically—must be understood broadly so that it harmonizes with § 1412. Section 1413(h)(1)(D) requires an SEA to provide direct services upon a determination that an LEA "has one or more child with disabilities who can best be served by a regional or State program. . . ." 20 U.S.C. § 1413(h)(1)(D). This language, on its own, gives little guidance to states, and the regulations do not clarify it. Section 1412, understood in light of the legislative history for the same section, gives meaning to the mandate for the SEAs to provide direct services at times.

Congress provided for some division of stewardship between LEAs and SEAs, but Congress also made sure that, at the end of the day, someone could be held responsible when breakdowns occurred and students with disabilities were deprived of educational services. That ultimate responsibility was to fall on SEAs. Thus, 20 U.S.C. § 1413(h) reflects the realistic notion that, while the LEAs generally provide educational services directly to students, at times the LEAs will fail for some reason, and if the LEAs are unable or unwilling to take the steps necessary to correct their failings, the SEA still ultimately bears the responsibility for delivering educational services to children who lose out because of the LEAs' inability or recalcitrance. If an LEA refuses to provide services that it is obligated to provide to a child, that child can "best be served" by the party bearing ultimate responsibility—the SEA—stepping in and exercising its authority, and if necessary, its control over the purse-strings.

Moreover, given that the IDEA is aimed at making sure disabled children receive educational services, if the local people will not or cannot provide them, it makes sense that those with oversight of public education in the state and authority to proportion IDEA money take on the task of doing so, or assuring that the LEA's come into compliance and provide services to students who may be experiencing a denial of educational services. In other words, the SEA is uniquely situated to make sure districts comply with the IDEA because it has oversight and authority over the school districts, which entails the ability to compel the districts to fulfill their responsibilities to students. The hierarchical distribution of responsibility assures that the buck stops at some point. Section 1412 of the IDEA expressly establishes that the buck stops with the SEA. Thus, the Court agrees with the Ninth Circuit's statement that, "whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level." *Doe by Gonzales v. Maher*, 793 F.2d at 1491–92.

For these same reasons, the Court believes that the word "determines" in § 1413(h) should not be interpreted to mean that the SAE must make a formal determination before it must provide direct services. The NMPED's argument in this regard stems from the ambiguity that inheres in the word "determines." No other Court appears to have analyzed the word's meaning in the context of § 1413(h). Three definitions to the word "determine" appear in Webster's II, New Riverside Dictionary: (i) "To decide or settle authoritatively or conclusively;" (ii) "To limit in scope or extent: fix the limits of;" and (iii) "To ascertain the extent, position, quality, or nature of something." Webster's II New Riverside Dictionary at 194 (Berkeley Books 1984). The Merriam–Webster Online Dictionary adds two other definitions that may be of relevance to usage in the IDEA: (i) "to find out or come to a decision about by investigation, reasoning, or calculation;" and (ii) "To come to a decision." Merriam–Webster Online Dictionary, http://www.merriam-

webster.com/dictionary/determine (last visited November 16, 2008). Thus, "determine" can entail an decision—perhaps even a formal one. On the other hand, the word can mean "to find out" something by way of investigation, reasoning, or calculation.

The statute's language offers helpful guidance in choosing which definition applies here. Section 1413 lists four situations that would give rise to a need for direct services if the SEA "determines" that one of those situations exists: the LEA or SEA (i) "has not provided the information needed to establish the eligibility of such local educational agency or State agency under this section;" (ii) "is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section;" (iii) "is unable or unwilling to be consolidated with 1 or more local educational agencies in order to establish and maintain such programs;" or (iv) "has 1 or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of such children." 20 U.S.C. § 1413(h).

The second and fourth situations listed are compatible with either definition of determinable. The SEA may need to make a decision about whether an LEA is unable to provide services, or whether there is one or more child who could best be served by direct services. The reason both of these situations would be the basis for a decision is that an exercise of judgment or discretion—both at the heart of a making a decision—might be needed to decide whether the situations existed.

On the other hand, there seems to be much less of a requirement of judgment or discretion for the SEA to "determine" that an LEA is "unwilling" to do something or has not provided required information to establish its eligibility. The SEA does not "decide" an LEA is unwilling to do something. More accurately, the SEA finds out, after investigating, that the LEA is unwilling to do something.

Thus, the reading of the word "determine" as implying a formal decision is incompatible with some parts of § 1413. The Court assumes that the drafters of the statute intended for the word "determine" to have the same meaning for each of the four listed situations. It therefore makes sense to adopt the meaning that allows the entire section of the statute to be read in a coherent way. The meaning which implies "finding out" best allows the statute to be read and understood in such a way. Thus, there is no call for an official decision for the SEA to "determine" that a child will "best be served" by direct services. Rather, the statute requires only that the SEA find out—perhaps after some investigation—that such a situation has arisen.

Such a reading of the statute better comports with its purposes as well. To fulfill their statutorily mandated responsibility to ensure that the IDEA is implemented, the SEAs must have the flexibility to make quick decisions when they learn that disabled children are being deprived educational services because an LEA refuses or is unable to provide those services. In other words, § 1413(h) does not restrict a SEA's ability to act to remedy problems it perceives at the local level until a formal determination is made. Rather, § 1413(h) not only permits, but requires SAEs to get the job done when they know that an LEA is failing one or more of its disabled children and the SAE has the ability to remedy the situation.

The standard in *Doe by Gonzales v. Maher* is also useful because it represents a recognition that there may be some limitations on a state's ability or need to intervene in local affairs. *See* 793 F.2d at 1492

("Although the state has broad responsibilities under the EAHCA, those responsibilities are not absolute. The state is not obliged to intervene directly in an individual case whenever the local agency falls short of its responsibilities in some small regard."). Appropriately, the Ninth Circuit noted: "The breach must be significant (as in this case), the child's parents or guardian must give the responsible state officials adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance." *Doe by Gonzales v. Maher*, 793 F.2d at 1492. It makes sense that the SEA's duty to intervene and provide direct services must be predicated upon it knowing that such services are needed. Furthermore, it would be unfair to hold the SEA liable for a violation if it did not have an opportunity to do anything to prevent the violation.

The circumstances of this case meet the criteria that the Ninth Circuit set forth in *Doe by Gonzales v. Maher*. The situation was such that the NMPED had an obligation to step forward, and either to require Tularosa Schools to provide Matthew Chavez with a FAPE or itself provide Matthew with a FAPE.

First, Tularosa Schools, the LEA in this case, failed to provide Matthew with a FAPE for two full school-years. That failure represents a significant breach. The Due Process Hearing Officer concluded that "Student was denied FAPE in the 2003–2004 and 2004–2005 school year . . . due to District's failure to amend the IEP to reflect Students' refusal to attend school and the physical impossibility of getting him there." DPHO Conclusion of Law ¶ 18, at 19. The Due Process Hearing Officer additionally concluded that "Student was denied FAPE . . . due to the District's failure to develop an updated FBA and appropriate behavior plan (BIP)

for Student once it was apparent that the BIP developed for the 2003–2004 school year was no longer working." *Id.* at 19. The AAO modified Conclusion of Law 18 to read: "Student was denied FAPE in the 2003–2004 and 2004–2005 school year to date due to the District's failure to amend the IEP to address Student's refusal to attend school." AAO Decision at 4. The Court does not perceive a significant difference between the Due Process Hearing Officer's and the AAO's version of Conclusion of Law ¶ 18 as far as the outcome of this case is concerned.

The parties have not disputed these administrative findings. The NMPED, however, appears to argue that no denial of FAPE occurred at all because Mr. Chavez and Ms. Nelson prevailed in the administrative process, and a remedy was provided. This argument, in essence, appears to be a form of bootstrapping, whereby the NMPED's violation is exonerated because the other liable party, Tularosa Schools, was already found liable and, according to the NMPED, paid its penance by implementing the AAO remedy. To the extent that Tularosa Schools implemented the AAO remedy, then, it wiped out the violation that the DPHO and AAO found to have occurred.

The NMPED's line of reasoning in that regard is unpersuasive. No one has attacked the administrative findings that a violation of FAPE has occurred, and even if they had, the Court finds evidence sufficient to support the finding. Thus, Tularosa Schools' liability is established. The question here is therefore whether the NMPED either aided or caused this violation, and whether it should, as a consequence, be held liable.

The Court does not believe that Tularosa Schools was unable to meet Matthew's needs. The Due Process Hearing Authority found that the District was "unable to

meet Student's needs at this time without intervention by on-site professionals, training and supervision by on-site professionals with expertise in autism." DPHO Finding of Fact ¶ 66, at 17. The AAO adopted the Due Process Hearing Officer's findings of fact, with the exception of finding of fact ¶ 60. *See* AAO Decision at 3. The AAO therefore adopted this finding that Tularosa Schools was unable, without intervention, to meet Matthew's educational needs. At the same time, the AAO recognized that its decision did not include a finding that Tularosa Schools could not adequately serve the student. *See* AAO Decision at 15. Part of the AAO's remedial order involved Tularosa Schools bringing in professional assistance, and the AAO expressed its belief that: "At this time, it appears that the local education agency can implement the remedy ordered by the administrative appeal officer for this student." *Id.* at 15.

Mr. Chavez and Ms. Nelson assert that Matthew could not receive a FAPE from Tularosa Schools because it lacked personnel qualified to teach him and it did not have a program available to meet his needs. *See* Plaintiffs' Brief at 12. Nevertheless, the Court accepts the AAO's determination that the district was capable of implementing the remedy set forth in the AAO Decision. In addition to the administrative record, upon which the AAO relied in formulating the belief that Tularosa Schools could, with professional help, provide educational services to Matthew Chavez, the Court also heard testimony from Tularosa Schools that it had such capabilities. *See, e.g.,* July 25, 2008 Tr. at 162:19–165:3 (Dembrowsky, Stewart). Dembrowsky, who was the director of special education at Tularosa Schools, testified, among other things, that Tularosa Schools received extensive support and training from the region, and that it was capable of

providing FAPE to Matthew Chavez. *See id.* (Dembrowsky, Stewart).

Whether Tularsoa Schools was unable to provide services is not determinative, however, because it has been established that, at the time that Matthew was being denied FAPE, the district was unwilling to provide the necessary services. "It would seem incontrovertable [sic] that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can best be served' on the regional or state level." *Doe by Gonzales v. Maher,* 793 F.2d at 1491–92. Under the IDEA, the SEA is responsible for direct services when a child can best be served on the regional or state level. *See id.* The NMPED is responsible for providing direct services when it has notice of such situations. *See id.*; 20 U.S.C. § 1413(h)(1). The NMPED's policy of sitting out and waiting for the dispute to percolate through the administrative proceedings does not exonerate the NMPED of its responsibility.

Second, the NMPED was on notice that the LEA was not providing FAPE to Matthew. The AAO erred in implying that the SEA cannot be put on notice until the LEA has failed to carry out a due-process hearing officer's order. *See* AAO Decision at 15. The NMPED argues that it is only required to provide direct services when there has been an official finding of failure. *See* July 25 Tr. at 33:22–25. The Court sees no reason to graft a new requirement on the statute that the "determination" be "official" or "formal." Rather, the Court understands that 20 U.S.C. § 1413(g)(1), fairly read, requires SAEs to provide direct services when they know failures are occurring at the local level, and when the SAE had a reasonable opportunity to compel local compliance.

The delays that Matthew Chavez experienced in receiving educational services are illustrative of how ill-advised it would be to require an official finding that a student is denied FAPE before the NMPED can act. The two-tiered administrative process can be ponderous, and, even if the parties remain actively engaged in assuring a rapid resolution, time and educational services can be lost. In this case, the DPHO's decision finding a denial of FAPE did not come down until November 17, 2004.[5] This was more than a year after Tularosa ceased to provide educational services to Matthew Chavez. To hold that the NMPED need do nothing until at least the announcement of the DPHO's official determination that a denial of FAPE has occurred would enshrine a policy that could allow months, and sometimes years, to pass by with a child receiving no education before the NMPED picks up any obligation to intervene. That is contrary to one of the main purposes of the IDEA, which is to counteract the historical lack of education being provided to handicapped individuals.

Mr. Chavez and Ms. Nelson provided notice to the NMPED. Mr. Chavez and Ms. Nelson wrote to the NMPED on September 25, 2003, and informed the NMPED that Matthew was not attending school because of behaviors flowing from autism and that Tularosa Schools was taking no steps to provide a FAPE to Matthew. *See* Letter of Complaint at 10–11. The Letter of Complaint gave details on the circumstances surrounding Matthew's refusal to attend school, Tularosa Schools' refusal to agree get Matthew to school, and Matthew's dis-enrollment. *See id.*

Moreover, the letter was not the only notice that the NMPED had regarding Matthew's situation and the fact that he was not attending school. Duane Ellis spoke by telephone at least once with Ms. Nelson about the Letter of Complaint and told her "good luck." *See* July 25 Tr. at 61:6–10 (Nelson). Duane Ellis also communicated with Tularosa Schools and sent case citations supporting the contention that the district had no responsibility cross the threshold of Matthew's home to get him to school. *See* DPHO Tr. at 228:18–229:11 (Dembrowsky, Stewart).

The NMPED therefore was apprised on multiple occasions of the difficulty occurring with Matthew Chavez. The Court does not find support in the statutory scheme for the contention that the NMPED either was able, or even obligated, to sit back and watch events unfold before it took some steps to compel Tularosa Schools to bring its actions into conformity with federal law until after there was a formal determination by the DPHO that Matthew was being denied FAPE. When a child covered by the act is not going to school at all, and the NMPED has ample notice of it, it has adequate notice for purposes of the IDEA.

Third, because the NMPED was put on notice about Tularosa Schools' failure to provide a FAPE for Matthew in September 2003, NMPED had ample time to compel Tularosa Schools to provide Matthew with a FAPE or to provide direct services to Matthew before the onset of the administrative proceedings in May 2004. Instead, however, of ensuring that Matthew received a FAPE, the NMPED took at

---

5. The NMPED has argued that Mr. Chavez and Ms. Nelson delayed the final decision of the DPHO. Even if the Court accepts that as true, the overall concern remains the same. The administrative process inevitably entails delays, even if the parties work as expeditiously as possible. The NMPED should not be encouraged to wait until an administrative determination is released before evaluating whether a disabled child needs its assistance in receiving educational services.

least some steps to actively uphold Tularosa Schools' refusal to develop a plan to provide Matthew with a FAPE when it informed Tularosa Schools that it had no obligation to retrieve Matthew from his home and provide case law on the topic. Because the AAO was correct that Matthew Chavez was not provided FAPE, and because the NMPED was ultimately responsible for ensuring that Matthew was provided FAPE, the NMPED violated the IDEA.

The Court emphasizes that it is not critical of how New Mexico structures its provision of educational services to students in New Mexico. The State remains largely free to administer educational services in the way that it deems best. The NMPED must be careful, however, to remember that, when the state takes millions of federal dollars, it may have to tweak its system to make sure the State—even if the local school districts provide otherwise provide direct services—is providing FAPE to its disabled students.

## B. THE COURT WILL NOT DECIDE WHETHER NMPED FAILED TO ENSURE IMPLEMENTATION OF THE AAO ORDER OR WHETHER IT FAILED TO ENSURE A CONTINUUM OF ALTERNATIVE PLACEMENT TO MATTHEW.

■■■ Mr. Chavez and Ms. Nelson argue that they have offered sufficient evidence for the Court to find that the NMPED failed to adequately implement the AAO order and that it failed to ensure a continuum of alternative placement for Matthew. The Court, however, declines to make these findings. In its October 19, 2006 MOO, the Court held that Mr. Chavez and Ms. Nelson could not bring an action to enforce the AAO decision if they were not an aggrieved party. *See* Oct. 19 MOO at

19. In the October 19 MOO, the Court did not foreclose the possibility of such an enforcement action under 42 U.S.C. § 1983. *See id.* ("The Tenth Circuit might well find, if the issue was presented to it, that, because, the Plaintiffs have exhausted all administrative remedies and the state has still not complied with the final order, § 1983 is available in such a limited situation."); *Robinson v. Pinderhughes,* 810 F.2d at 1275; *Miller v. Bd. of Educ. of Albuquerque Pub. Schs.,* 2006 WL 2786759, at *22; *A.T. v. N.Y. Educ. Dep't,* 1998 WL 765371, at *7; *Metro. Sch. Dist. v. Buskirk,* 950 F.Supp. at 902; *Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696,* 951 F.Supp. at 885, 886 n. 13; *Grace B. v. Lexington Sch. Comm.,* 762 F.Supp. at 418; *Reid v. Bd. of Educ., Lincolnshire–Prairie View Sch. Dist. 103,* 765 F.Supp. at 969. Mr. Chavez and Ms. Nelson do not bring such a 42 U.S.C. § 1983 claim here, and thus, the argument regarding the NMPED's failure to ensure implementation of the AAO order is tantamount to an attempt to re-litigate the enforcement question that the Court has already decided.

While the Court reconsidered its October 19 MOO to the extent that it later found that Mr. Chavez and Ms. Nelson were aggrieved parties with respect to whether NMPED failed offer direct services where it had a duty to do so, *see* Sept. 10 MOO, the Court reaffirmed its explanation of the governing legal principles, *see id.* at 11. Specifically, the Court stated:

While the Court believes that its decision in the October 19 MOO correctly construed the IDEA not to allow the Plaintiffs to use this case to enforce the AAO Decision, the Court, in its focus on the law, may not have adequately focused on the particular facts and procedural posture of this case. While the Court continues to believe that the

Plaintiffs cannot use the IDEA to enforce the AAO Decision in federal court, the Court concludes that it may not have fully acknowledged the relief the Plaintiffs sought from the AAO and did not secure.

Sept 10 MOO at 11. Under those principles, the Court does not have jurisdiction to hear an enforcement action of the favorable AAO Decision.

In arguing for a finding that the NMPED failed to ensure a continuum of alternative placements throughout the state of New Mexico, Mr. Chavez and Ms. Nelson invite the Court to take on the task of forcing systematic changes to the way in which the NMPED operates. The Court is concerned that doing so is beyond the scope of this lawsuit. Perhaps that is the reason why even Mr. Chavez and Ms. Nelson have noted: "[T]he Court could, but need not, find that NMPED failed … to ensure a continuum of alternative placement to Matthew." Plaintiffs' Supp. Brief at 2. The Court agrees with Plaintiffs that it need not decide the issue. The Court will instead limit its attention to the claims upon which its jurisdiction is based: namely, Mr. Chavez and Ms. Nelson's contention that they were aggrieved by the finding and decision of the AAO. *See* 20 U.S.C. § 1415(i)(2)(A). The evidence presented on the claim properly before the Court deals with whether the NMPED failed in its duties to Matthew Chavez under the IDEA.

For similar reasons, the Court does not believe that it needs to delve into whether the NMPED had adequate monitoring processes. Mr. Chavez and Ms. Nelson are arguing about "macro" level problems in the NMPED and its methods of monitoring for compliance. *See* Plaintiffs' Supp. Brief at 2 (noting that there was evidence of "macro" level deficiency in the monitoring system and evidence that the

NMPED did not respond to the concerns of parents of disabled children). The Court, however, declines Mr. Chavez and Ms. Nelson's invitation to begin tinkering, on a systemic level with the way the NMPED operates except to the extent that Mr. Chavez and Ms. Nelson have proved an actual violation of the IDEA that deprived Matthew Chavez of FAPE. This case is not the proper setting for the Court to go beyond deciding whether the NMPED violated the IDEA as to Matthew Chavez and to begin ordering the NMPED to revamp the way it operates on a system-wide level. Mr. Chavez and Ms. Nelson have not shown that systematic changes and different monitoring processes are needed to remedy the wrong as to Matthew Chavez. The problem was not that the Matthew Chavez flew under the NMPED's radar. Rather, the problem was that the NMPED failed to act when it knew that Matthew Chavez was not receiving educational services.

## V. *THE REQUESTED REMEDIES ARE INAPPROPRIATE.*

Mr. Chavez and Ms. Nelson request three remedies, all of which are inappropriate in this case. First, they requested that the Court order compensatory education. Second, they request $80,000.00 in reimbursement for teaching services that Ms. Nelson rendered during the eighteen-month period in which Matthew was denied educational services. Third, they request that the Court order the NMPED to install a hotline, which parents of disabled children can call and notify the NMPED of LEA's failings or possible deprivations of FAPE.

 With regard to compensatory education, the Court finds that such a remedy would be duplicative of what was provided in the AAO Decision. The AAO set forth a detailed, twelve-point remedy to help

Matthew Chavez to catch up. The Court makes no comment as to whether Tularosa Schools faithfully implemented the remedy while Matthew Chavez remained in Tularosa or whether Albuquerque Public Schools is now providing FAPE. The Court concludes only that it does not make sense for the Court to re-order the same remedy for the NMPED's IDEA violation.

■ With regard to reimbursement, the NMPED argues that Mr. Chavez and Ms. Nelson are asking for compensatory or tort damages—which IDEA prohibits—in the guise of equitable reimbursement. Their position is not without merit. While the Tenth Circuit has not explicitly decided whether compensatory damages are available under the IDEA, *see Moseley v. Board of Educ. of Albuquerque Public Schools*, 483 F.3d 689, 693 (10th Cir.2007), it noted that the majority of circuits have held that the IDEA does not permit compensatory damages, *see id.* (citing *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir.2006); *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir.2003); *Sellers v. Sch. Bd.*, 141 F.3d 524, 526–27 (4th Cir. 1998); *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir.1996); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996)). The Courts of Appeals finding that the IDEA prohibits money damages have based their holding on a Supreme Court decision that interpreted the language of the IDEA's predecessor statute, which stated that courts may "grant such relief" as they deem "appropriate." *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

In *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, the Supreme Court held that such power must be interpreted in light of the Act's purposes. *See id.* According to the Supreme Court, the Act's purpose "is prin-cipally to provide handicapped children with 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.'" 471 U.S. at 369, 105 S.Ct. 1996 (citations omitted). Given that purpose, the Supreme Court found that the Act contemplated that "such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible." *Id.*

Given that private school would have been appropriate because the LEA denied a student FAPE, and that the parents' unilateral decision to pay for private education was subsequently vindicated, the Supreme Court in, *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.*, held that tuition reimbursement for private school was appropriate. *See* 471 U.S. at 369, 105 S.Ct. 1996. The Supreme Court did not appear to be opening the door to tort-style money damage claims by holding that reimbursement would be allowed. It explained:

"[T]he [LEA] repeatedly characterizes reimbursement as 'damages,' but that simply is not the case. Reimbursement merely requires the [LEA] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP. Such a post hoc determination of financial responsibility was contemplated in the legislative history."

*Id.* at 370, 105 S.Ct. 1996.

■ Various circuit courts interpreted this Supreme Court case as precluding tort-style money damages under the IDEA. *See, e.g., Sellers by Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524, 526–27 (4th Cir.1998). As the Honor-

able J. Harvey Wilkinson, Circuit Judge for the Fourth Circuit, explained in *Sellers by Sellers v. School Bd. of City of Mannassas, Va.:*

> Tort-like damages are simply inconsistent with IDEA's statutory scheme. The touchstone of a traditional tort-like remedy is redress for a broad range of harms "associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *United States v. Burke,* 504 U.S. 229, 239, 112 S.Ct. 1867, 119 L.Ed.2d 34 . . . (1992)(interpreting Title VII). By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.

141 F.3d at 527.

The Court notes that the NMPED has made arguments similar to those that the LEA made in *School Committee of Town of Burlington, Mass. v. Department of Educ. Of Mass.,* which is that the request for reimbursement is actually a request for damages. There is merit to the argument that the reimbursement that Mr. Chavez and Ms. Nelson seek more closely resembles consequential damages. Rather than spending money to place Matthew in an suitable program, his mother kept him at home. While she may have provided educational services—and the record does not adequately catalogue the extent or value of these services—she does not show that she paid out-of-pocket expenses.

At the same time, it would seem hollow to tell Ms. Nelson that, under Supreme Court precedent, if she had paid the money to place Matthew in a private program or paid a consultant to help Matthew receive the educational benefits to which he was entitled, she would qualify for reimbursement, whereas, if she chose, either by economic necessity or otherwise, to provide the services herself, she could not be reimbursed her losses incurred for doing

so. It would seem that a fair reading of *School Committee of Town of Burlington, Mass. v. Department of Educ. Of Mass.* would leave open the possibility that, like the parents in that case, Mr. Chavez and Ms. Nelson here could prove what it cost Ms. Nelson to provide services, and reimburse her those costs. Even if that were the case—and the Court does not explicitly decide that it is—it does not matter, because Mr. Chavez and Ms. Nelson have not provided sufficient proof in the record regarding what reimbursement they are entitled to receive. Rather, they have offered testimony about the market value of the services that Ms. Nelson rendered. *See* July 25, 2008 Tr. at 185:2–5, 15–17, 20–25; 186:1–187:5; and 187:23–188:12 (Dembrowsky). To discuss payment for the value of services starts to sound a lot like compensation rather than reimbursement. That is not sufficient to prove that Mr. Chavez and Ms. Nelson should receive any reimbursement. Because the Court believes that its focus in fashioning equitable relief for an IDEA violation should be on ensuring Matthew Chavez' education rather than on compensating his mother for her services, the Court will not use the thin evidence that Mr. Chavez and Ms. Nelson proffered for the value of Ms. Chavez' services to create equitable relief.

 Regarding the hotline, Mr. Chavez and Ms. Nelson have cast this remedy as one that will prevent Matthew from being deprived of FAPE in the future. Mr. Chavez and Ms. Nelson offer no proof, however, that Matthew Chavez or students like him would be better off if the NMPED were forced to expend already scarce resources to run a hotline. Parents and LAEs already have the ability to call or write the NMPED. Ellis testified that he received between 700–1000 calls per year at NMPED. *See* Ellis Depo. At 7:13–14. In this case, there has been no argument that the NMPED did not receive Mr. Chavez and Ms. Nelson's communications.

Rather, the argument is that Plaintiffs successfully relayed their concerns to the NMPED, and that the NMPED then sat on its hands and did nothing or supported Tularosa Schools' failure to provide FAPE. The problem here was not notice, but failure to act properly on that notice. Given the facts, the existence of a hotline would have had no impact on NMPED's actions as to Matthew Chavez. The Court also does not think that such a hotline is necessary to prevent a future problem for Matthew Chavez. The problem to avoid in the future is the NMPED's refusal to get involved early in the failures such as those in Tularosa Schools' case. Perhaps the Court's finding that the NMPED's refusal in this case violated the IDEA will be helpful to the NMPED avoiding similar mistakes as to Matthew Chavez in the future.

Part of this lawsuit involved determining that such calls and letters can constitute notice to the NMPED that it may need to provide direct services. Having a special, dedicated hotline does little, if anything, to add meaning to that. The Court therefore declines to order the NMPED to install a hotline to field phone calls that can just as easily be directed to the NMPED.

## VI. THE COURT DOES NOT FIND AN APPROPRIATE REMEDY FOR THE IDEA VIOLATION IN THIS CASE.

Although the Court has rejected Mr. Chavez and Ms. Nelson's requested reme-dies, it has power to fashion an appropriate remedy under the right circumstances. The Court finds, however, that those circumstances do not exist this case. The primary injury asserted here was a denial of FAPE. The Court holds that the NMPED failed to provide FAPE, and that it had adequate notice and opportunity to compel Tularosa Schools to comply or to step in and provide direct services to Matthew Chavez. At the same time, the evidence shows that, while Matthew was out of school for the relevant time period, his mother, commendably, appears to have kept him on track. The AAO remedy, including the compensatory education, have also helped Matthew to regain lost ground. Given that Mr. Chavez and Ms. Nelson have not proved expenses that they had to cover to keep Matthew on track during the eighteen-month period during which he was denied FAPE, the Court does not have the option of awarding reimbursement, which might be proper. The Court therefore awards no damages or other relief to Mr. Chavez and Ms. Nelson.[6]

**IT IS ORDERED** that the AAO's conclusion that she did not have jurisdiction over the NMPED is error. The Court finds that Defendant New Mexico Public Education Department was a proper party to the administrative process, that it denied Matthew Chavez FAPE for the 2003–2004 and 2004–2005 school years, and that

---

6. The Court realizes that it is an unfulfilling result to find liability and, at the same time, award no remedy. The NMPED argues that, if the Court could not provide relief, the Court did not have jurisdiction to hear the case in the first place. Such a conclusion is contrary to common sense. The Court accepted jurisdiction based on Mr. Chavez and Ms. Nelson's contention that the NMPED failed to fulfill its duty to Matthew Chavez, under the IDEA, to ensure that he was receiving FAPE. In other words, Mr. Chavez and Ms. Nelson asserted the deprivation of a right created by federal statute, and the Court properly heard their claims. The fact that, after all is said and done, the Court finds that Mr. Chavez and Ms. Nelson have proved a violation and an injury that, under these circumstances, cannot be properly and appropriately remedied and compensated, does not change the fact the Court had jurisdiction to hear the case.

the NMPED violated the Individuals with Disabilities Education Act. The Court will not, however, order remedies or compensation for this violation. Mr. Chavez and Ms. Nelson may apply for fees and costs under applicable law and the local rules if fees and costs are appropriate.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Alter or Amend Judgment Under IDEA to Include Remedy to Compensate Child for Two Year Deprivation of FAPE and Memorandum in Support, filed November 24, 2008 (Doc. 225)("Motion"). Having determined that the Court has sufficient information to decide this Motion on the briefing, it did not hold a hearing. The primary issue is whether the Court should amend its Memorandum Opinion and Order, entered November 17, 2008 (Doc. 219)("MOO") to provide additional compensatory education, reimbursement to Plaintiff Beverly Nelson for the value of educational services she provided to Matthew Chavez, and a social-skills coach for Matthew. Because the Motion largely revisits old arguments that the Court already carefully considered and rejected, and otherwise asks the Court to fashion relief that the Court finds to be inappropriate, the Court will deny the Motion.

### PROCEDURAL BACKGROUND

The factual and procedural background to the Plaintiffs' case under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–82 ("IDEA"), is set forth in detail in the Court's November 17, 2008 MOO. Briefly, the Plaintiffs asserted three claims against the New Mexico Public Education Department ("NMPED") pursuant to the IDEA. First, the Plaintiffs alleged that the NMPED is an agency of the State of New Mexico that monitors Tularosa Municipal Schools and other local school districts in the State for compliance with its rules and standards. *See* First Amended Complaint ¶ 8, at 3. Consequently, under the IDEA, the NMPED may be directly responsible for the provision of education to students with disabilities pursuant to 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360. Second, the NMPED knew that their son Matthew and other students in the autism spectrum with complex behavioral needs were not, and are not, being provided appropriate educational placements by the Tularosa Schools and other public school districts, and failed to act to require that an appropriate placement be provided or to offer an appropriate placement consistent with its obligations under IDEA and, as a result, Matthew was denied FAPE. Third, in violation of IDEA, the NMPED supported Tularosa Schools' refusal to develop an appropriate program for Matthew, which constitutes an abdication of its supervisory responsibility to enforce IDEA in this state and to ensure that all children with disabilities are provided FAPE in accordance with the IDEA.

This case underwent a two-tiered administrative process, beginning with a hearing before the Due Process Hearing Officer ("DPHO") and continuing with and appeal to the Administration Appeal Officer ("AAO"). After completing the administrative process, the Plaintiffs appealed certain findings and conclusions from the administrative process to this Court. The primary issues raised in the appeal from the administrative process were: (i) whether the AAO erred by failing to exercise jurisdiction over claims against the NMPED; (ii) whether the NMPED had a duty under the IDEA to make certain that the Tularosa Schools, and if not Tularosa Schools, then the NMPED provided educational services to Matthew Chavez; and (iii) whether equitable relief should include

reimbursement for Beverly Chavez' efforts in home schooling Matthew during the time he was not in school, compensatory education, injunctive and declaratory relief, and systemic relief to ensure, across the State of New Mexico, an adequate continuum of alternative placements for Matthew as a student with autism.

The Court held a two-day evidentiary hearing on July 25, 2008 and August 1, 2008. The parties stated that they wished to supplement the record with the additional exhibits and testimony. *See* Transcript of Evidentiary Hearing at 37:3–9 (July 25, 2008)(Doc. 157)("July 25 Tr.")(Court, Stewart & Wechsler). Accordingly, the Court allowed the parties to supplement the record, although the Court did not incorporate all evidence presented at the July 25, 2008 and August 1, 2008 hearings into the administrative record. Rather, the Court incorporated select portions of evidence that it found to be helpful to making a final determination.

On November 17, 2008, the Court entered its final order on the Plaintiffs' IDEA claims. *See* MOO at 1–2. The Court found that the AAO's conclusion that she did not have jurisdiction over the NMPED was error and that the NMPED was a proper party to the administrative process. The Court further found that the NMPED denied Matthew a Free and Appropriate Public Education ("FAPE") for the 2003–2004 and 2004–2005 school years, and that the NMPED violated the IDEA. The Court did not, however, order remedies or compensation for this violation. *See* MOO at 51.

The Plaintiffs, through this Motion, now ask the Court to reconsider its decision not to order a remedy and to fashion equitable relief, including ordering the NMPED to find and provide an expert to teach Matthew social skills, awarding additional compensatory education, and awarding reim-

bursement to Ms. Nelson for the value of the educational services she provided to Matthew while he was being deprived FAPE. *See* Motion at 2. The Plaintiffs argue that the Court has authority to "amend its findings, make additional findings and amend its judgment" pursuant to rule 52(b) of the Federal Rules of Civil Procedure. *See* Motion at 2. The Plaintiffs also invoke rule 59 as authority for the Court to alter or amend a judgment.

In support of their request for additional compensatory education, the Plaintiffs contend that the Court's finding that compensatory education would be duplicative disregarded the "limited" nature of the AAO's award of compensatory education. Motion at 4. The Plaintiffs argue that the AAO refused jurisdiction over the NMPED, and therefore did not analyze additional relief that should have been required of the NMPED. The Plaintiffs therefore urge the Court to reconsider and order additional compensatory education.

The Plaintiffs request social-skills training for the first time. They note that Matthew was not able to access any of the social components of the educational process and that he suffered harm to his ability to socialize. *See* Motion at 6. The Plaintiffs cite *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), for the broad proposition that education is of paramount importance. *See* Motion at 4–5 (citing *Brown v. Board of Education*, 347 U.S. at 493). They also quote from *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), that " 'personal intercommunication among students' " is " 'an important part of the educational process,' " and that " '[a] student's rights, therefore, do not embrace merely the classroom hours.' " Motion at 5 (quoting *Tinker v. Des Moines Indepen-*

*dent Community School District,* 393 U.S. at 512).

The Plaintiffs renew their request for reimbursement on the grounds that the "real equities" make such an award appropriate. Motion at 8. They also argue that the decision of the Supreme Court of the United States in *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), supports an award of reimbursement. *See* Motion at 8. Accordingly, the Plaintiffs "contend that IDEA supports creation of an equitable remedy for reimbursement to the parent for her services at the cost that the school would have paid to provide such services in the first instance." Motion at 8–9.

The NMPED argues that the Court should deny the Motion because it raises no arguments that the Court did not previously address or that could not have been raised earlier. *See* Response of Defendant New Mexico Public Education Department to Plaintiffs' Motion to Alter or Amend Judgment Under IDEA to Include Remedy to Compensate Child for Two Year Deprivation of FAPE and Memorandum in Support at 2, filed December 11, 2008 (Doc. 233)("Response"). The NMPED contends that the "Plaintiffs rehash previously presented arguments that the Court has already considered and rejected." *Id.* The NMPED also argues that the Plaintiffs fail to identify a clear error of law that compels a change in the Court's prior ruling or to explain how the ruling will lead to manifest injustice. *See* Response at 3.

The NMPED also addresses the merits of the Plaintiffs' request for remedies, and argues that the request for reimbursement reflects a request for tort damages, which are inappropriate under the IDEA, and that FAPE is the focus of the IDEA. *See* Response at 3. The NMPED argues that there is no evidence in the record to sup-port the contention that Matthew lost social skills or that he would benefit from social-skills training. Finally, the NMPED argues that the Plaintiffs did not provide evidence that the compensatory education which the AAO ordered for Matthew was limited. *See* Response at 4.

The Plaintiffs reply that the relief they have requested is consistent with the IDEA's purposes, which, in addition to providing FAPE, also encompass "enabling parents to have the tools necessary to improve educational results for students with disabilities," and "'assess[ing] . . . and ensur[ing] the effectiveness of, efforts to education children with disabilities.'" Plaintiffs' Reply in Support of Their Motion to Alter or Amend Judgment under IDEA to Include Remedy to Compensate Child for Two Year Deprivation of FAPE at 4, filed December 22, 2008 (Doc. 234)("Reply")(no citation given for quoted language). Given those purposes, the Plaintiffs argue that the Court can provide equitable relief that does not duplicate the relief that the AAO Order provided. *See* Reply at 7. One avenue for such relief would be "an equitable award of reimbursement to Plaintiffs to be put in trust for educational expenses for Matthew. . . ." *Id.* The Plaintiffs suggest that setting up such a trust would provide reimbursement for the family and would provide compensatory services for Matthew. *See id.* They contend that lack of a remedy in this case will not encourage enforcement of the IDEA in this state.

### THE LAW REGARDING RULE 59(e) MOTIONS

A motion to reconsider that is filed within ten days of a final judgment is considered to be a rule 59(e) motion to alter or amend the judgment. *See Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000). Rule 59(e) states: "A motion to alter or amend a judgment

must be filed no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). The grounds warranting such a motion are "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* On a motion brought under rule 59(e), "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does,* 204 F.3d at 1012.

### ANALYSIS

The Court understands that the Plaintiffs may feel that they attained somewhat of a Pyrrhic victory on their IDEA claim against the NMPED, given that they spent many years and a great deal of energy litigating before the Court entered its MOO finding that a violation occurred but declining to grant a remedy. Nonetheless, having reviewed the Motion and the briefing from both parties, the Court believes that its ruling was correct. The Plaintiffs have not shown that they qualify under any of the circumstances that would give rise to a meritorious 59(e) motion. They apparently recognize that the only scenario which might apply to them is the need to correct manifest injustice. They therefore do not attempt to argue any of the other circumstances—*i.e.,* an intervening change in controlling law or new evidence that was previously unavailable.

The Plaintiffs are understandably not satisfied with the result and wish to take one final stab at litigating it. A motion to alter or amend a judgment, however, is not the appropriate context for such re-litigation. The Court continues to believe that an order for compensatory education would be duplicative of what the AAO already awarded. As the Court discussed in the MOO, the reimbursement request is not suitable in this case as an equitable remedy. Finally, the novel request for a social-skills coach, which was never litigated, and for which no evidence was presented, is inappropriate.

### I. THE REQUESTS FOR COMPENSATORY EDUCATION AND REIMBURSEMENT MAKE ARGUMENTS THE COURT HAS ALREADY CAREFULLY CONSIDERED AND REJECTED.

■■■ A motion to alter or amend a judgment to correct clear error or to prevent manifest injustice "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does,* 204 F.3d at 1012. In this case, the Court has carefully considered the facts and the law, and does not believe it has misapprehended either. The Court also believes that it has accurately ascertained the Plaintiffs' position.

The Plaintiffs now argue that the award of compensatory education that the AAO ordered was limited and that the AAO could not have considered what remedies should lie against the NMPED. The Plaintiffs could have raised this argument earlier, but they did not do so. Even so, the Court does not find the argument compelling. As the Court discussed in the MOO, the AAO outlined a detailed twelve-point remedy, which included compensatory education. The Court does not believe that it misapprehended the nature of the AAO's order or failed to appreciate the limited nature of the remedy the AAO ordered. It may be true that "the AAO decision was primarily concerned with reintegrating Student into the school environment," Motion at 4, and that "the AAO was only providing remedy based on her assessment of Tularosa's deprivation of FAPE to Matthew," *see id.* Even grant-

ing that those two contentions are true for the sake of argument, the Plaintiffs represented in earlier briefing that they "do not seek any qualitative reexamination of the remedy ordered by the AAO" and "do not complain of the [AAO] order except to the extent Tularosa is incapable or·unwilling to comply with the order." Plaintiffs' Motion for Stay–Put Order or Preliminary Injunction Against Defendants Tularosa and New Mexico Public Education Department and Memorandum in Support at 4, filed December 20, 2005 (Doc. 37). Moreover, the Court did not base its finding regarding compensatory education on what it perceived to be the AAO's objectives or bases for its twelve-point award. Rather, the Court carefully reviewed the twelve-point order, and found that the remedy itself adequately dealt with compensatory education and that it would be duplicative to obligate the NMPED to also provide compensatory education. There is no sound reason to revisit that holding.

The Court also believes that it adequately understood the arguments, evidence, and legal landscape against which it decided that reimbursement would not be appropriate in this case. The Plaintiffs do not provide any new evidence that was previously unavailable bearing on reimbursement. Rather, they call the Court's attention to the transcript of the July 25, 2008 evidentiary hearing—a hearing which occurred before this Court and a transcript of which the Court carefully reviewed. The Plaintiffs do not contend that the Court overlooked or misunderstood key evidence. Instead, they offer additional explanation of the evidence and give reasons for their decision to ask for reimbursement calculated on the cost to the school of providing educational services to Matthew for the time period in which he was not receiving FAPE. *See* Motion at 7 ("Plaintiffs were not seeking 'lost wages' and therefore believed that reference to

the actual cost of provision of services served as a better guidepost for reimbursement to the family."). This second look at the evidence does not alter the Court's conclusions about reimbursement being an inappropriate remedy in this case.

The Court also does not believe that it misread the case law upon which it relied to reach its decision. The Plaintiffs suggest that *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.* compels an order of reimbursement in this case. The Court discussed that case at length and found it distinguishable from this case. *See* MOO at 47–49. *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.* stands for the proposition that it is appropriate under some circumstances for a district court to order reimbursement of educational expenses that a family had to cover as a result of a child being deprived FAPE. The Court found that it was not appropriate in this case, and that the record did not adequately bear out a reimbursement award. The Plaintiffs do not provide any evidence that the Court overlooked and which might induce the Court to reconsider. Reimbursement is not appropriate in this case.

In this Motion, the Plaintiffs have attempted to recast the reimbursement request to make it look less like tort money damages. Specifically, they have presented the Court with the option of placing the reimbursement award in a trust which would be used to pay for Matthew's educational expenses. Ordering a trust, the principle of which is calculated based on the cost of the provision of education had the school or NMPED provided those services during the period of deprivation, appears to have little resemblance to reimbursement for expenses that Beverly Chavez incurred. ·Rather, the requested

reimbursement sounds like compensatory education. The idea seems to be that the NMPED will pay money into a trust, and the money in the trust will be used to pay for educational expenses. As the Court noted, however, the AAO Order already dealt with education to make up for what Matthew was deprived, and the NMPED paid Tularosa Schools—albeit belatedly, the Plaintiffs contend—for that compensatory education. The Court does not believe there is a good reason to now order the NMPED to put more funds into a trust to pay for more educational services for Matthew, given that the AAO Order, if properly implemented, would provide the education that Matthew lost out on when the violations occurred. Either way the reimbursement award is characterized, the Court has carefully considered the new arguments, and reaffirms its initial finding that this is not a case where reimbursement is appropriate.

## II. THE COURT WILL NOT ORDER THE NMPED TO PROVIDE A SO-CIAL–SKILLS TUTOR.

■ The Plaintiffs ask the Court to fashion equitable relief to include "enjoining NMPED to work [ ] with the Plaintiffs to identify a provider with expertise in autism who can provide social skills training to Matthew." Motion at 2. Alternatively, they ask that the Court order the NMPED to reimburse a social-skills trainer of the parents' choice for 180 hours of social skills training. Later in the same Motion, they argue that "[t]here are multiple good reasons for the Court to deny the request to consider, post-judgment, the heretofore unrequested provision of a social skills tutor." Motion at 2. First, a rule 59(e) motion is not the proper avenue for a

new request for relief that could have been raised before judgment was entered. *See Servants of Paraclete v. Does,* 204 F.3d at 1012 (explaining that, on a rule 59(e)motion to alter or amend a judgment, "[i]t is not appropriate to revisit issues already addressed *or advance arguments that could have been raised in prior briefing.*")(emphasis added). The Plaintiffs do not offer any reason why they did not ask for this remedy earlier. It appears that the remedy occurred to them belatedly, and that they seek to work their new request into a motion to alter or amend the judgment.

■ Second, and more important, even if the Court were not concerned about the relief being requested for the first time in a motion to alter or amend the judgment, the relief is not appropriate. The Court agrees with the Plaintiffs that the primary goals of the IDEA are to provide education, to enable parents to have the tools necessary to improve educational results for students with disabilities, and to assess and ensure the effectiveness of efforts to education children with disabilities. In short, the IDEA is focused on education. Socializing is often[1] a beneficial, but incidental byproduct of public education. The Court does not believe a student should receive a windfall in the form of social-skills coaching after he has already received compensatory education.

*Tinker v. Des Moines Independent Community School District,* upon which the Plaintiffs rely to support their contention that socialization is an important goal of public education, is a case grounded in First–Amendment principles. Without questioning the validity of the pronounce-

---

**1.** Many parents shun public and private school, preferring instead to home-school their children, precisely to avoid some of the socializing that occurs at school. Parents do not typically home-school their children to try to avoid education—the primary purpose of school.

ment in *Tinker v. Des Moines Independent Community School District* on the importance of personal interaction among school children, the Court is confident that *Tinker v. Des Moines Independent Community School District* has nothing to say about what is or is not an appropriate remedy under the IDEA. When the Supreme Court in *Tinker v. Des Moines Independent Community School District* discussed stated that "[a] student's rights, therefore, do not embrace merely the classroom hours," 393 U.S. at 512, it was referring to First–Amendment rights. The Court therefore does not believe it can reasonably ascertain how the IDEA is supposed to function from *Tinker v. Des Moines Independent Community School District.*

**IT IS ORDERED** that the Plaintiffs' Motion to Alter or Amend Judgment Under IDEA to Include Remedy to Compensate Child for Two Year Deprivation of FAPE and Memorandum in Support is denied.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Clarify Declarations of Law in IDEA Order Against the Public Education and to Alter or Amend Judgment to Include Injunctive Relief and Memorandum in Support, filed November 24, 2008 (Doc. 224). Having carefully considered the briefing, the Court has determined that a hearing is not necessary. The primary issues are: (i) whether the Court should clarify the holding of its November 17, 2008 Memorandum Opinion and Order (Doc. 219)("MOO"); and (ii) whether the Court should grant an injunction prohibiting enforcement of NMAC 6.31.13(I)(3)(d). The Court believes that its November 17 MOO was sufficiently clear in articulating what the New Mexico

Public Education Department's obligations are with respect to Plaintiffs Simon Chavez and Beverly Nelson, and to their son Matthew Chavez—at least as far as this lawsuit is concerned. There is no need for further clarification. Because an injunction of the regulation at issue would go beyond the scope of this lawsuit, the Court will not enjoin its enforcement.

## PROCEDURAL HISTORY

The factual and procedural background to the Plaintiffs' case under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–82 ("IDEA"), is set forth in detail in the Court's November 17, 2008 MOO. Briefly, the Plaintiffs asserted three claims against the New Mexico Public Education Department ("NMPED") pursuant to the IDEA. First, the Plaintiffs alleged that the NMPED is an agency of the State of New Mexico that monitors Tularosa Municipal Schools and other local school districts in the State for compliance with its rules and standards. *See* First Amended Complaint ¶ 8, at 3. Consequently, under the IDEA, the NMPED may be directly responsible for the provision of education to students with disabilities pursuant to 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360. Second, the NMPED knew that their son Matthew and other students in the autism spectrum with complex behavioral needs were not, and are not, being provided appropriate educational placements by the Tularosa Schools and other public school districts, and failed to act to require that an appropriate placement be provided or to offer an appropriate placement consistent with its obligations under IDEA and, as a result, Matthew was denied a Free and Appropriate Public Education ("FAPE"). Third, in violation of IDEA, the NMPED supported Tularosa Schools' refusal to develop an appropriate program for Matthew, which constitutes an abdication of its supervisory responsibility to en-

force IDEA in this state and to ensure that all children with disabilities are provided FAPE in accordance with the IDEA.

This case underwent a two-tiered administrative process, beginning with a hearing before the Due Process Hearing Officer ("DPHO") and continuing with and appeal to the Administration Appeal Officer ("AAO"). After completing the administrative process, the Plaintiffs appealed certain findings and conclusions from the administrative process to this Court. The primary issues raised in the appeal from the administrative process were: (i) whether the AAO erred by failing to exercise jurisdiction over claims against the NMPED; (ii) whether the NMPED had a duty under the IDEA to make certain that the Tularosa Schools, and if not Tularosa Schools, then the NMPED provided educational services to Matthew Chavez; and (iii) whether equitable relief should include reimbursement for Beverly Chavez' efforts in home schooling Matthew during the time he was not in school, compensatory education, injunctive and declaratory relief, and systemic relief to ensure, across the State of New Mexico, an adequate continuum of alternative placements for Matthew as a student with autism.

The Court held a two-day evidentiary hearing on July 25, 2008 and August 1, 2008. The parties stated that they wished to supplement the record with the additional exhibits and testimony. *See* Transcript of Evidentiary Hearing at 37:3–9 (July 25, 2008)(Doc. 157)("July 25 Tr.")(Court, Stewart & Wechsler). Accordingly, the Court allowed the parties to supplement the record, although the Court did not incorporate all evidence presented at the July 25, 2008 and August 1, 2008 hearings into the administrative record. Rather, the Court incorporated select portions of evidence that it found to be helpful to making a final determination.

On November 17, 2008, the Court entered its final order on the Plaintiffs' IDEA claims. *See* MOO at 1–2. The Court found that the AAO's conclusion that she did not have jurisdiction over the NMPED was error and that the NMPED was a proper party to the administrative process. The Court further found that the NMPED denied Matthew FAPE for the 2003–2004 and 2004–2005 school years, and that the NMPED violated the IDEA. The Court did not, however, order remedies or compensation for this violation. *See* MOO at 51.

The Plaintiffs now move the Court to clarify the November 17 MOO and to enjoin the enforcement of NMPED regulation NMAC 6.31.13(I)(3)(d). Although their Motion comes ostensibly as a rule 59(e) motion to alter or amend a judgment, there is language in the Motion suggesting that the Plaintiffs interpret the November 17 MOO as an order for declaratory relief, and that they are now asking the Court to issue declaratory relief to more explicitly settle the legal relationship between NMPED, the Plaintiffs, and Matthew. *See* Motion at 4 ("Plaintiffs seek specific declarations which Plaintiffs believe are inherent in the Court's MOO, but if made more explicit would help to further settle the legal relationship between parties. The Tenth Circuit has identified several factors that courts should consider when determining whether to issue declaratory relief."). The Plaintiffs contend that a clarifying declaration is necessary in this case because the NMPED has "steadfastly rejected the very analysis set forth by the Court regarding its responsibilities under IDEA, and because NMPED has gone so far as to issue a regulation inconsistent with the Court's analysis." Motion at 5.

1. *The Plaintiffs' Requested Declarations.*

The Plaintiffs seek a declaration that: (i) "[p]arents' communication to NMPED

that their children are being denied FAPE can constitute notice to NMPED that it may need to act to ensure provision of FAPE including, if appropriate, providing or arranging for the provision of direct services," Motion at 7; (ii) "[t]he NMPED is required to provide direct services to students as set forth by IDEA provision mandating SEA responsibility for direct services regardless of how the state structures its provision of educational services to students in New Mexico," *id.*; and (iii) "[t]here is no requirement for formal determination by a due process hearing officer that a child is being denied FAPE prior to NMPED being on notice that it must determine whether it is required to provide direct services pursuant to IDEA," *id.*

The Plaintiffs point out that Matthew continues to be a student in New Mexico. Matthew now attends school in the Albuquerque Public Schools system. The Plaintiffs argue that, despite Matthew's continuing entitlement to an education, NMPED has demonstrated a pattern of refusing to act to ensure that Matthew receives education services. *See Motion* at 6. As evidence supporting their contention that NMPED refuses to act to ensure that Matthew receives services to which he is entitled, the Plaintiffs cite other litigation that is being pursued on Matthew's behalf, including a state complaint that was filed after Matthew was denied thirty-six days of FAPE, and *Nelson v. Albuquerque Public Schools,* No. Civ. 07–1027, which is pending before the Honorable Judge Judith Herrera, in the United States District Court for the District of New Mexico. According to the Plaintiffs, the posture that the NMPED has adopted in those other cases illustrates that NMPED does not wish to carry out its responsibilities under the IDEA. *See* Motion at 6.

The NMPED counters that a motion to clarify the Court's November 17 MOO is unnecessary. *See* Response of Defendant New Mexico Public Education Department to Plaintiffs' Motion to Clarify Declarations of Law in IDEA Order Against the Public Education Department and to Alter or Amend Judgment to Include Injunctive Relief and Memorandum in Support at 2, filed December 10, 2008 (Doc. 232)("Response"). The NMPED argues that the "Plaintiffs cite to sections of the 52 page MOO on the IDEA claim for every proposition on which they seek a declaration." Response at 2. NMPED contends that, given the fact that the Plaintiffs can cite passages from the November 17 MOO to support all three declarations they seek, "it is hard to imagine what additional guidance they believe is necessary or what argument Plaintiffs believe the Court overlooked." Response at 3. Finally, the NMPED states that it is capable of reading and understanding the Court's IDEA order. NMPED represents that, "[o]nce this case is final, the NMPED has every intention of fully complying with the final decisions of the courts. In the meantime, an additional court order covering issues already fully addressed in unnecessary and improper." *Id.*

The Plaintiffs reply that "[i]t appears from NMPED's response to Plaintiff's [sic] motion that NMPED is conceding" the declarations they requested. Plaintiffs' Reply in Support of Their Motion to Clarify Declarations of Law in IDEA Order Against the NMPED and to Alter or Amend Judgment to Include Injunctive Relief and Memorandum in Support at 1, filed December 22, 2008 (Doc. 235)("Reply"). The Plaintiffs also insist that clarification of the November 17 MOO is "more important than ever" because of the ongoing relationship that exists between the NMPED and Matthew as Matthew continues to reside in New Mexico. Reply at 2.

## 2. *NMAC 6.31.13(I)(3)(d)*.

The Plaintiffs ask the Court to enjoin the enforcement of NMAC 6.31.13(I)(3)(d), which states:

> [A]n IDEA due process hearing provides a forum for reviewing the appropriateness of decisions regarding the identification, evaluation, placement or provision of a free appropriate public education for a particular child with a disability by the public agency that is or may be responsible under state law for developing and implementing the child's IEP or ensuring that a FAPE is made available to the child; the IDEA does not authorize due process hearing officers to consider claims asserting that the department should be required to provide direct services to a child with a disability pursuant to 20 USC Sec. 1413(g)(1) and 34 CFR Sec. 300.227 because the responsible public agency is unable to establish and maintain appropriate programs of FAPE, or that the department has failed to adequately perform its duty of general supervision over educational programs for children with disabilities in New Mexico; accordingly, a due process hearing is not the proper forum for consideration of such claims and the department will decline to refer such claims against it to a hearing officer; such claims may be presented through the state-level complaint procedure under Subsection H of 6.31.2.13 NMAC above.

6.31.13(I)(3)(d). The Plaintiffs insist that this regulation, which was issued in 2007, is illegal and that the Court should explicitly declare that the regulation violates the IDEA. *See* Motion at 8. The Plaintiffs argue that, because the regulation prohibits appointment of a due-process hearing officer for claims asserting NMPED's responsibility to provide direct services under IDEA "in direct contravention of the

Court's order in this case, Plaintiffs request that this Court clarify that it's [sic] MOO declares that NMPED's legal position as enshrined in its regulation violates IDEA." Motion at 8.

The NMPED urges the Court not to issue a declaration addressing matters outside the allegations in the Complaint. *See* Response at 3. The NMPED notes that this lawsuit is not a class action, and it is improper for the Plaintiffs to seek a declaration addressing the application of the law to facts outside those raised in the Complaint. *See* Response at 3. The NMPED notes that the regulation that the Plaintiffs ask the Court to address was issued in 2007, while IDEA claims in this case arose out of events that occurred during the 2002–03, 2003–4, 2004–05, and 2005–06 school years. Furthermore, a due-process hearing addressing the Plaintiffs' allegations was held on 2004. Thus, according to the NMPED, the 2007 version of the regulation has nothing to do with the claims asserted in this case. *See* Response at 3.

The Plaintiffs reply that, because the NMPED has regulations that contradict the Court's November 17 MOO, and because Matthew is still a student in New Mexico, an injunction is necessary to ensure that Matthew is able to seek redress through the administrative process for his claims against the NMPED. *See* Reply at 3. The Plaintiffs argue that, without an injunction, any administrative IDEA due-process hearing officer considering an administrative claim against the NMPED by Matthew would have to choose between conformance with this Court's November 17 MOO or conformance with the state regulation. *See* Reply at 3. The Plaintiffs further assert that, without an injunction, Matthew may again have to battle through years of litigation in order to have his claims against the NMPED heard. *See id.*

### THE LAW REGARDING RULE 59(e) MOTIONS

A motion to reconsider that is filed within ten days of a final judgment is considered to be a rule 59(e) motion to alter or amend the judgment. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.2000). Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). The grounds warranting such a motion are "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* On a motion brought under rule 59(e), "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d at 1012.

### ANALYSIS

The Motion appears to contain requests for two different forms of relief: (i) declaratory relief; and (ii) an order altering or amending the judgment. Because the Plaintiffs, through the Motion, ask the Court to modify its November 17 MOO, for which final judgment has been entered, and because the Motion comes within ten days of final judgment, the Court will treat it as a motion to alter or amend under rule 59(e). *See Servants of Paraclete v. Does*, 204 F.3d at 1012. Under rule 59(e), a Court may alter or amend a final judgment only under limited circumstances, none of which are present in this case. If the Court were to interpret the request for declaratory relief as anything other than a motion to alter or amend the judgment, it would appear as if the Plaintiffs were attempting to smuggle an essentially new lawsuit for declaratory relief into a post-judgment motion without following the procedures for instituting a new lawsuit. The Court will therefore assume that the Plaintiffs are merely requesting that the Court alter or amend the judgment by amplifying its impact. The Court declines to do so. The Court has declared the law the best it can, and the Court does not believe there is any dispute about the Court's interpretation of the law. The question is whether the NMPED intends to conform its conduct to the Court's interpretation or to continue to exempt itself from the due-process hearings.

Moreover, to the extent that the Plaintiffs seek to invite the Court to delve into matters extraneous to this litigation—and in some cases, directly impacting other lawsuits in which the Plaintiffs are presently involved—the Court declines the invitation, and will limit its consideration to this case and the claims raised in the operative Complaint.

### I. CLARIFICATION OF THE COURT'S PRIOR HOLDING IS UNNECESSARY.

The Plaintiffs have not argued in this Motion that the MOO should be modified because there has been an intervening change in controlling law, because new and previously unavailable evidence has emerged, or because the Court committed clear error. Rather, they state that the requested clarifications—which reflect either modifications to the existing order or declarations on new claims—are necessary to prevent manifest injustice. They do not adequately explain, however, how manifest injustice will occur in this lawsuit without the relief they seek.

The November 17 MOO reflects the Court's consideration and determination of the Plaintiffs' IDEA claims against the NMPED in this lawsuit. In their Motion, the Plaintiffs correctly characterize the Court's MOO to the extent that they

point out that: (i) the NMPED violated the IDEA by not compelling Tularosa Schools to comply to provide FAPE to Matthew, or by not stepping in and itself providing direct services to Matthew; and (ii) the DPHO and the AAO erred in declining to exercise jurisdiction over the NMPED. *See* Motion at 4. The Court stated in relevant parts of its MOO:

If the NMPED fails to intervene, and either compel the LEA's compliance with the IDEA or provide direct services where it is required to do so, then it is subject to a claim. The NMPED is a properly named defendant in this lawsuit, and the Due Process Hearing Officer had jurisdiction. The Court therefore disagrees with DPHO Conclusion of Law ¶ 3 that the Due Process Hearing Officer did not have jurisdiction over claims against the NMPED. *See* AAO Decision at 13–15.

. . . .

The language, structure, and history of the IDEA lead the Court to believe that, when an SEA finds out that an LEA, in contravention of the IDEA, refuses to offer educational services to a student with disabilities, and the SEA either does nothing, or affirmatively encourages the LEA in its noncompliance with the IDEA, the SEA may be liable for the violation.

MOO at 30, 32. This passage, and other language from the November 17 MOO, demonstrate that the Court made relatively clear findings with respect to whether the NMPED violated the IDEA on the facts of this case.

The Court does not believe that either party misunderstands the Court's holding. Rather, the Court believes that the Plaintiffs wish for the Court to make broader declarations with broader implications than what the Court was willing to make in the November 17 MOO. The Plaintiffs

do not, at any point in their briefing, point to a manner in which the NMPED might not be able to comply with the MOO. The Plaintiffs have difficult pointing to directions with which the NMPED cannot comply, because, while the Court found that the NMPED violated the IDEA, the Court did not order any relief from the NMPED. In other words, the Court did not order further action by the NMPED in its MOO. The MOO puts the NMPED on notice that if, in the future, it finds itself in circumstances similar to those raised in this lawsuit, it might be liable for a violation. The Court did not go further because it believed—and continues to believe—that doing so would be inappropriate in this case.

The Plaintiffs are understandably unsatisfied with that aspect of the Court's holding. At the same time, the Court does not believe they are correct to say that the MOO leaves Matthew a right without a remedy. One reason why the Court found further remedy unnecessary against the NMPED is that Matthew received an appropriate remedy through the administrative process. The Court did not believe that any additional remedy was appropriate.

The Plaintiffs point out that the NMPED continues to be recalcitrant in other lawsuits and circumstances with regard to taking action that would be consistent with the MOO. Nevertheless, the Court will not insinuate itself into other lawsuits and conflicts which are not before it. The Court's MOO is binding on the parties to this lawsuit in the context of the claims asserted in this lawsuit. The Court will not modify its MOO in an attempt to expand the MOO's scope and to reach out to impact other possible litigation in which Matthew might be involved against the NMPED. The MOO sufficiently apprises the parties to this case of their duties to

each other with respect to this litigation. The Court need not go further.

## II. *THE COURT WILL NOT ENJOIN THE ENFORCEMENT OF NMSA 6.31.13(I)(3)(d).*

■■■ The Plaintiffs' request to enjoin the enforcement of NMSA 6.31.13(I)(3)(d) constitutes a new request for relief that was not raised in the briefing on the original IDEA claim. A motion to alter or amend a judgment brought pursuant to rule 59(e) is not the appropriate avenue to request relief that a plaintiff could have requested before the Court entered final judgment. On a rule 59(e) motion, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does,* 204 F.3d at 1012. In this case, the Plaintiffs seek to advance an argument that they could have raised in a prior filing. It is therefore inappropriate. The current form of the regulation has existed since 2007. The briefing on the IDEA claims in this case was not completed until November 2008. There can therefore be no contention that this regulation came to light after the judgment, and that it constitutes new evidence necessitating that the Court revisit the final judgment.

Moreover, the Court is not convinced that it is necessary to enjoin the enforcement of NMSA 6.31.13(I)(3)(d) to permit full implementation of its MOO. It might be true that the regulation conflicts with the Court's finding that the NMPED should have participated in the administrative process in this case. It might also be true that the NMPED has chosen to retain the regulation in the hope that the Tenth Circuit will resolve the possible split in authority that exists in the District of New Mexico regarding whether the DPHO or the AAO might, in appropriate cases, have

jurisdiction over the NMPED as a party. Even if those two propositions are true, the Court does not see what they have to do with this lawsuit. The Court issued a clear order finding that, NMPED policy notwithstanding, in this case, NMPED's stance and behavior constituted a violation of the IDEA. Although the Court did not order any further relief against the NMPED, the NMPED now has at least one Court on the record finding that, under some circumstances, its chosen approach can result in liability under the IDEA.

For the Court to go further—on a motion to alter or amend a judgment no less—would make the Court appear somewhat as a roving legislature. A primary justification that the Plaintiffs give for enjoining the regulation is that, "because the NMPED has regulations directly contradictory to the Court's declaration and because Matthew continues to be a student in New Mexico, further relief is required to ensure that Matthew is able to seek redress through the administrative procedures available under IDEA for his claims against the NMPED." The argument, by its terms, betrays the fact that the requested injunction is not about this lawsuit, but about other lawsuits in which Matthew is, or might be, involved.

■■■ The Tenth Circuit has observed that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979). Courts may, when appropriate, take judicial notice *sua sponte. See id.* Accordingly, the Court notes that Ms. Nelson has a lawsuit on behalf of Matthew pending in the United States Court for the District of New

Mexico in front of Judge Herrera. That litigation has produced at least one judicial opinion which might contradict the MOO is some regards. *See Nelson v. Albuquerque Public Schools,* No. Civ. 07–1027, Memorandum Opinion and Order at 11 (January 7, 2009). In *Nelson v. Albuquerque Public Schools,* Judge Herrera held that

until Plaintiffs exhaust their administrative remedies under the IDEA with regard to their claims against APS, their claims against the NMPED are premature . . . because there can be no determination that an SEA has failed to ensure compliance with the IDEA until there is a determination that the LEA has violated the IDEA.

*Nelson v. Albuquerque Public Schools,* No. Civ. 07–1027, at 11. In light of *Nelson v. Albuquerque Public Schools* and this Court's November 17 MOO, it is possible that the NMPED and any due-process hearing officer facing an attempt by a plaintiff such as the Plaintiffs in this case to include the NMPED in the administrative process faces conflicting district court opinions regarding the correct course of action. At this point, however, such a predicament is not the Court's concern.

█ The Court decided the IDEA claims based on the Plaintiffs' operative Complaint and upon the arguments raised in this lawsuit. Without regard to what was happening in other unrelated lawsuits involving Matthew, the Court issued its ruling and found that the NMPED had violated the IDEA. Thus, while the Plaintiffs argue that future due-process hearing officers face the conundrum of either following this Court's opinion or following the

regulation, as a procedural matter, a conundrum does not exist. The Court's order concerned this case, and the action of the DPHO and the AAO in the administrative proceeding to this case. The Court found that there was an error where the DPHO failed to exercise jurisdiction. Future hearing officers will probably not treat the November 17 MOO as binding, because district court opinions are not, as a matter of law, binding authorities except on the parties,[1] and the NMPED is, respectfully, declining to find the Court's interpretation of the law as binding on it in other cases. *See United States v. Worthon,* 520 F.3d 1173, 1179–80 (10th Cir. 2008). The future hearing officers will probably follow the policies that the NMPED has decided to implement rather than this Court's interpretation of the IDEA. At the same time, the NMPED is aware that at least one district court has ruled in such a way that its refusal to join due-process proceedings may raise questions of liability in the future. Beyond that, if there is a conflict between different judges in the District of New Mexico, it will be an issue for the Tenth Circuit to resolve.

In the meantime, the Court will not attempt to add force to its previous ruling by announcing that, as a general proposition, NMSA 6.31.13(I)(3)(d) is invalid. The Plaintiffs have alluded to the difficulties they might face in their other lawsuit without an injunction. Given the Plaintiffs' references to the other lawsuit, an injunction at this juncture would have the appearance of being an attempt by the Court

---

1. Given that the due-process officers are employees of the NMPED, there is a theoretical possibility that, in other litigation in the state, the Plaintiffs could raise collateral estoppel against the NMPED on issues that the Court decided in this case. The Court is not aware whether the Plaintiffs have raised such an

argument in other litigation, or whether another judge in the District of New Mexico would credit the argument. In any case, the Plaintiffs' choice whether to use this Court's November 17 MOO for collateral estoppel purposes does not impact the Court's analysis in this Memorandum Opinion and Order.

to override part of Judge Herrera's holding in *Nelson v. Albuquerque Public Schools*. In other words, the Plaintiffs are not only asking the Court to offer relief that is beyond the scope of the original lawsuit, but they are also potentially asking the Court to attempt to impact proceedings on Judge Herrera's docket. Such action not appropriate, and the Court will not indulge such a request.

In sum, neither form of relief that the Plaintiffs seek on this Motion is proper. The Court's November 17 MOO does not need clarification, and the Court trusts the NMPED's representations that it understands the MOO and its impact. The NMPED will have to make a decision regarding how it chooses to structure its operations and how to pursue its litigation strategy in future IDEA cases brought against it. In the meantime, the November 17MOO is clear regarding the NMPED's failures in the case of *Chavez v. Board of Education of Tularosa Municipal Schools*, No. Civ. 05–0380. Furthermore, an injunction of the enforcement of NMSA 6.31.13(I)(3)(d) was not an issue in this case before final judgment, and the request is not properly raised as one on a motion to alter or amend the judgment. The Court therefore declines to enjoin the regulation's enforcement.

**IT IS ORDERED** that the Plaintiffs' Motion to Clarify Declarations of Law in IDEA Order Against the Public Education and to Alter or Amend Judgment to Include Injunctive Relief and Memorandum in Support the is denied.